UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **Susan Neese, M.D**, and **James Hurly, M.D.**, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Xavier Becerra**, in his official capacity as Secretary of Health and Human Services, **United States of America**,<br><br>Defendants. | Case No. 2:21-cv-00163 |

## COMPLAINT—CLASS ACTION

Section 1557 of the Affordable Care Act prohibits "sex" discrimination in any health program or activity that receives federal financial assistance. *See* 42 U.S.C. § 18116. On May 10, 2021, Secretary Becerra announced that the Department of Health and Human Services (HHS) will "interpret and enforce" section 1557 to prohibit: (1) "discrimination on the basis of sexual orientation"; and (2) "discrimination on the basis of gender identity." *See* Exhibit 1. The Secretary's interpretation of section 1557 is incompatible with the statutory language, and the Court should declare it so and enjoin the Secretary from using or enforcing this interpretation of section 1557.

### JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Susan Neese, M.D., is a citizen of Texas who resides in Potter County.

4. Plaintiff James Hurly, M.D., is a citizen of Texas who resides in Potter County.

5. Defendant Xavier Becerra is the U.S. Secretary of Health and Human Services. He may be served at his office at 200 Independence Avenue SW, Washington, D.C. 20201. Secretary Azar is sued in his official capacity.

6. Defendant United States of America is the federal government of the United States of America.

## STATEMENT OF FACTS

7. Section 1557 of the Affordable Care Act provides:

> [A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a).

8. None of the anti-discrimination statutes mentioned in section 1557 prohibit discrimination on account of "sexual orientation" or "gender identity."

9. In *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), the Supreme Court held that Title VII's prohibition on "sex" discrimination prohibits employers from firing or refusing to hire individuals "for being homosexual or transgender."

10. *Bostock* explained that an employer who fires an employee for conduct or personal attributes that it would tolerate in a person of the opposite biological sex has

made the employee's sex the "but-for cause" of his discharge, and that (in the Court's view) automatically violates the statutory command of Title VII. The Court explained:

> If the employer fires the male employee for no reason other than the fact he is attracted to men, the employer discriminates against him for traits or actions it tolerates in his female colleague. Put differently, the employer intentionally singles out an employee to fire based in part on the employee's sex, and the affected employee's sex is a but-for cause of his discharge. Or take an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female. If the employer retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth. Again, the individual employee's sex plays an unmistakable and impermissible role in the discharge decision.

*Bostock*, 140 S. Ct. at 1741–42.

11. *Bostock* also makes clear that an employer does *not* violate Title VII if it fires an employee for conduct or personal attributes that it would not tolerate in an employee of the opposite biological sex:

> Take an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team. Assuming the employer would not have tolerated the same trait in a man, Title VII stands silent.

*Bostock*, 140 S. Ct. at 1742.

12. *Bostock* does not prohibit employers from discriminating on account of sexual orientation or gender identity, so long as they do not engage in "sex" discrimination when doing so.

13. For example, *Bostock*'s interpretation of Title VII does not prohibit discrimination against bisexual employees or job applicants, so long as the employer regards bisexual behavior or orientation as equally unacceptable in a man or a woman. *See, e.g.*, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1742 (2020) ("Take an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team. Assuming the employer would not have tolerated the same trait

in a man, Title VII stands silent."); *see also id*. at 1740 ("[F]iring [a] person for actions or attributes it would tolerate in an individual of another sex . . . discriminates against that person in violation of Title VII."). Discrimination against a bisexual employee or job applicant is certainly discrimination on account of "sexual orientation," but it is not discrimination on account of "sex."

14. *Bostock* also allows employers to discriminate against homosexual or transgender employees or job applicants, so long as they do so according to rules that apply equally to both sexes and would lead to the same result if the employee's biological different were different. An employer, for example, may decide that he will not employ any person, male or female, who takes testosterone supplements—regardless of whether those supplements are being taken by a biological woman who wants to appear as a man, or by a biological man who wants bigger muscles. Or he may decide that he will not employ any person, male or female, who has undergone surgery to modify their genitals. Policies of that sort obviously discriminate against transgender individuals, but they do not constitute "sex" discrimination as defined in *Bostock* because the rules apply equally to both biological sexes. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1746–47 (2020) ("We agree that homosexuality and transgender status are distinct concepts from sex.").

15. Secretary Becerra's edict of May 10, 2021, wrongly equates discrimination on account of sexual orientation and gender identify with "sex" discrimination. Yet there are many ways in which health-care providers can deny or withhold controversial treatments demanded by homosexual, bisexual, or transgender patients without engaging in "sex" discrimination as defined in *Bostock*.

16. Consider a health-care provider who refuses to prescribe testosterone hormone to a biological woman who wishes to appear as a man. If that provider would have equally refused to prescribe those hormones to a biological man, then there is no "sex" discrimination under *Bostock*.

17. Or consider a health-care provider who refuses to refer a biological man for a sex-change operation that would remove his penis and testicles. As long as that provider would have equally refused to refer a biological female for that identical operation, then there is no "sex" discrimination under *Bostock*.

18. Or consider a health-care provider who refuses to prescribe Truvada or PrEP drugs to homosexual men because he does not wish to facilitate homosexual sodomy, which he regards as immoral or contrary to his religious beliefs. So long as that provider would likewise refuse to prescribe Truvada or PrEP drugs to female patients, then he has not engaged in "sex" discrimination of any sort.

19. Yet the Becerra edict would consider this a violation of section 1557, because it falsely states that *Bostock* prohibits all forms of discrimination on the basis of "sexual orientation" or "gender identity." *See* Exhibit 1 at 2 ("The *Bostock* majority concluded that the plain meaning of "because of sex" in Title VII necessarily included discrimination because of sexual orientation and gender identity."). *Bostock* held nothing of the sort. It remains perfectly legal after *Bostock* to "discriminate" against homosexual or transgender individuals, so long as one does not engage in "sex" discrimination when doing so—*i.e.*, so long as one does not treat a biological man differently from how he would treat an identically situated biological woman.

## FACTS RELATED TO STANDING

20. Plaintiff Susan Neese, M.D., is an internal medicine specialist in Amarillo, Texas. She is affiliated with Baptist Saint Anthony's Hospital, which receives federal money and is subject to section 1557.

21. Dr. Neese's views on transgenderism are nuanced. She has treated patients suffering from gender dysphoria in the past and has on occasion prescribed hormone therapy for them. But she does not believe that hormone therapy or sex-change op-

erations are medically appropriate for everyone who asks for them, even if those individuals are suffering from gender dysphoria, and she will on occasion decline to prescribe hormone therapy or provide referrals for sex-change operations, consistent with her Hippocratic Oath to do no harm.

22. Secretary Becerra's interpretation of section 1557 interferes with Dr. Neese's ability to conduct her medical practice, thereby inflicting injury in fact. This injury is traceable to Secretary Becerra, and it will be redressed by the declaratory and injunctive relief sought in this lawsuit.

23. Plaintiff James Hurly, M.D., is a board-certified pathologist in Amarillo, Texas. He is employed by the Amarillo Pathology Group, which receives federal money and is subject to section 1557.

24. Dr. Hurly's views on transgenderism are nuanced. Although he recognizes that some biological men may identify as women (and vice versa), he has encountered situations in his medical practice when he must insist that a patient acknowledge his biological sex rather than the gender identity that he asserts. For example, Dr. Hurly once diagnosed a biological male patient with prostate cancer, but the patient refused to accept Dr. Hurly's diagnosis because he identified as a woman and insisted that he could not have a prostate. Dr. Hurly had to firmly explain to this patient that he was indeed a biological man with a prostate, and that he needed to seek urgent medical treatment for his prostate cancer.

25. Secretary Becerra's interpretation of section 1557 interferes with Dr. Hurly's ability to conduct his medical practice, thereby inflicting injury in fact. This injury is traceable to Secretary Becerra, and it will be redressed by the declaratory and injunctive relief sought in this lawsuit.

## CLASS-ACTION ALLEGATIONS

26. The plaintiffs bring this class action under Rule 23(b)(2) of the federal rules of civil procedure.

27. Dr. Neese and Dr. Hurly seek to represent a class of all health-care providers subject to section 1557 of the Affordable Care Act.

28. The number of members in the class makes joinder of the individual class members impractical.

29. There are questions of law common to the class, including whether Secretary Becerra's Notification of Interpretation and Enforcement of May 10, 2021, correctly interprets section 1557 and *Bostock*.

30. Dr. Neese and Dr. Hurly's claims are typical of other members of the class, as each of them wishes to preserve the autonomy of their medical practice.

31. Dr. Neese and Dr. Hurly adequately represent the interests of the class, and they have no interests antagonistic to either of the classes.

32. A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

### Claim 1: Administrative Procedure Act

33. Secretary Becerra's Notification of Interpretation and Enforcement of May 10, 2021, is "not in accordance with law" under section 706(2)(A) of the APA, because it wrongly equates discrimination on account of sexual orientation and gender identity with "sex" discrimination.

34. The Court should "hold unlawful and set aside" the Notification of Interpretation and Enforcement of May 10, 2021, and it should enjoin the Secretary from enforcing its interpretation of section 1557.

35. The plaintiffs bring this claim under sections 702, 704, and 706 of the APA. *See* 5 U.S.C. §§ 702, 704, 706.

## Claim 2: Declaratory Judgment Act

36. Section 1557 and *Bostock* do not prohibit discrimination on account of sexual orientation and gender identity. They prohibit only discrimination on account of "sex," and they allow health-care providers to take discriminatory actions with respect to homosexual, bisexual, or transgender patients as long as they would have acted in the same manner had the patient had been a member of the opposite biological sex.

37. The Court should therefore declare that section 1557 does not prohibit discrimination on account of sexual orientation and gender identity, as Secretary Becerra claims, but that it prohibits only "sex" discrimination, which means that provider would have acted differently toward an identically situated member of the opposite biological sex.

38. The plaintiffs bring this claim under 28 U.S.C. § 2201.

## DEMAND FOR RELIEF

39. The plaintiffs respectfully request that the court:

   a. certify the class described in paragraph 27;

   b. hold unlawful and set aside Secretary Becerra's Notification of Interpretation and Enforcement of May 10, 2021;

   c. enjoin Secretary Becerra form using or enforcing the interpretation of section 1557 that appears in the Notification of Interpretation and Enforcement of May 10, 2021;

   d. award the declaratory relief described in paragraph 37;

   e. award costs and attorneys' fees;

   f. award all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs*

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Marvin W. Jones
Texas Bar No. 10929100
Christopher L. Jensen
Texas Bar No. 00796825
Sprouse Shrader Smith PLLC
701 S. Taylor, Suite 500
Amarillo, Texas 79101
(806) 468-3335 (phone)
(806) 373-3454 (fax)
marty.jones@sprouselaw.com
chris.jensen@sprouselaw.com

Dated: August 25, 2021