UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **Susan Neese, M.D** and **James Hurly, M.D.**, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>**Xavier Becerra**, in his official capacity as Secretary of Health and Human Services; **United States of America**,<br><br>    Defendants. | Case No. 2:21-cv-00163-Z |

**BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table of contents ...................................................................................................................i

Table of authorities ...............................................................................................................ii

    I.  The plaintiffs have Article III standing to seek relief against Secretary Becerra.........2

    II.  The Secretary's notification of May 10, 2021, is "not in accordance with law" because it wrongly equates all discrimination on account of sexual orientation and gender identity with "sex" discrimination.........................................................3

    III. The Court should enter a declaratory judgment that section 1557 does not prohibit all discrimination on account of "sexual orientation" and "gender identity" ...................................................................................................................6

        A.  The Court may award declaratory relief under either 28 U.S.C. § 2201 or 5 U.S.C. § 702..................................................................................................6

        B.  The plaintiffs are entitled to declaratory relief.....................................................9

Conclusion ...........................................................................................................................11

Certificate of service ............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) ......................................................passim

*Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods*,
  915 F.2d 167 (5th Cir. 1990) ..................................................................................8

*Doe v. Bolton*, 410 U.S. 179 (1973) ...........................................................................2

*Earnest v. Lowentritt*, 690 F.2d 1198 (5th Cir. 1982) ......................................................7

*Green Valley Special Utility District v. City of Schertz*,
  969 F.3d 460 (5th Cir. 2020) ..................................................................................8

*Harris County v. MERSCORP Inc.*, 791 F.3d 545 (5th Cir. 2015) .....................................7

*Lowe v. Ingalls Shipbuilding, A Division of Litton Systems, Inc.*,
  723 F.2d 1173 (5th Cir. 1984) ................................................................................7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................2

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) .............................................7

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) .........................................7

*Steffel v. Thompson*, 415 U.S. 452 (1974) ...................................................................2

*Stenberg v. Carhart*, 530 U.S. 914 (2000) ...................................................................2

**Statutes**

20 U.S.C. § 1681(a) ...............................................................................................10

28 U.S.C. § 2201(a) ................................................................................................7

**Rules**

Department of Health And Human Services, *Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972*, 86 Fed. Reg. 27,984 (May 25, 2021) ....................1

**Other Authorities**

David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41 ................................7

John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989 (2008) ..........................................7

On May 10, 2021, Secretary Becerra issued a "Notification of Interpretation and Enforcement," which declares that section 1557 of the Affordable Care Act prohibits all forms of "discrimination on the basis of sexual orientation" and all forms of "discrimination on the basis of gender identity." *See* Department of Health And Human Services, *Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972*, 86 Fed. Reg. 27,984 (May 25, 2021). The Secretary's notification not only announces the Department's views on section 1557, but threatens to enforce this interpretation of the statute against every health program or activity that receives federal funds. *See id.* at 27,894 ("[B]eginning May 10, 2021, the Department of Health and Human Services (HHS) will interpret *and enforce* section 1557 of the Affordable Care Act prohibition on discrimination on the basis of sex to include: Discrimination on the basis of sexual orientation; and discrimination on the basis of gender identity." (emphasis added)).

The Secretary's notification misconstrues section 1557 and the Supreme Court's ruling in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), and this Court should set aside the notification under section 706 of the APA. The Court should also declare that section 1557 of the Affordable Care Act, as construed in *Bostock*, does not prohibit discrimination on account of "sexual orientation" and "gender identity," but only discrimination on account of "sex," and it allows a health-care provider to take discriminatory actions with respect to homosexual, bisexual, or transgender patients as long as that provider would have acted in the same manner had the patient had been a member of the opposite biological sex. The plaintiffs are entitled to judgment as a matter of law on each of these claims, and there are no genuine issues of material fact.

I. **THE PLAINTIFFS HAVE ARTICLE III STANDING TO SEEK RELIEF AGAINST SECRETARY BECERRA**

To establish Article III standing, one or more of the plaintiffs needs to show: (1) an injury in fact, which is (2) fairly traceable to the challenged conduct of the defendants, and is (3) likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Only one of the plaintiffs needs Article III standing to seek the requested relief; if a single plaintiff can establish Article III standing, then the remaining plaintiffs may seek the same relief, regardless of whether they would have standing in their own right. *See Bowsher v. Synar*, 478 U.S. 714, 721 (1986).

Each of the plaintiffs is unwilling to provide gender-affirming care, in at least some situations, to patients who assert a gender identity that departs from their biological sex. *See* Declaration of Susan Neese ¶¶ 9–20 (attached as Exhibit 1); Declaration of James Hurly ¶¶ 7–10 (attached as Exhibit 2). Yet Secretary Becerra is threatening to cut off federal funding from these plaintiffs and health-care providers throughout the United States unless they immediately cease all forms of "discrimination on the basis of gender identity"—a phrase that is left undefined in the notification of May 10, 2021. The Declaratory Judgment Act and the rules of Article III have long permitted pre-enforcement challenges in these situations. *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (allowing abortion providers to challenge a state abortion statute "despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes."); *Stenberg v. Carhart*, 530 U.S. 914, 938–46 (2000); *see also* Opinion and Order, ECF No. 30, at 7–15.

The Secretary has previously argued that the plaintiffs' injuries are too speculative to support Article III standing because: (1) The notification does not say whether the Department will compel health-care providers to provide hormone therapy to minors or provide other forms of medical treatment that violate the plaintiffs' ethical beliefs;[1] and (2) The plaintiffs have not alleged or shown that they are certain to encounter transgender patients who request medical treatment the plaintiffs find objectionable.[2] *See* Defs.' Br. in Support of Mot. to Dismiss, ECF No. 16, at 8. The district court correctly rejected these arguments in its order of April 26, 2022, and it should do again. *See* Opinion and Order, ECF No. 30, at 10–13. The plaintiffs' previous allegations, which sufficed to establish standing at the motion-to-dismiss stage, are now incorporated into sworn declarations that demonstrate Article III standing consistent with this Court's analysis in its earlier ruling. *See* Neese Decl. ¶¶ 6–22 (attached as Exhibit 1); Hurly Decl. ¶¶ 5–13 (attached as Exhibit 2).

## II. The Secretary's Notification Of May 10, 2021, Is "Not In Accordance With Law" Because It Wrongly Equates All Discrimination On Account Of Sexual Orientation And Gender Identity With "Sex" Discrimination

The plaintiffs acknowledge that the holding of *Bostock* applies to Title IX and section 1557. But the Secretary is misinterpreting *Bostock* when he declares that section 1557 prohibits *all* forms of "discrimination on the basis of sexual orientation" and *all* forms of "discrimination on the basis of gender identity." *Bostock* holds only that a statutory prohibition on "sex" discrimination will encompass discriminatory

---

1. Defs.' Br. in Support of Mot. to Dismiss, ECF No. 16, at 9 ("The Notification states that it 'does not itself determine the outcome in any particular set of facts.'").
2. Defs.' Br. in Support of Mot. to Dismiss, ECF No. 16, at 8 ("Plaintiffs . . . speculate that they might one day have patients seeking treatment Plaintiffs would prefer not to provide.").

acts taken against homosexual or transgender individuals *if*—and *only if*—the allegedly discriminatory act depends on the individual's biological sex.

The Court explained that an employer who fires individuals merely "for being homosexual or transgender" has engaged in "sex" discrimination, because it is firing an employee for conduct or personal attributes that it would tolerate in an identically situated member of the opposite biological sex. That makes the employee's biological sex the "but-for cause" of his discharge, and that (in the Court's view) violates the statutory command of Title VII. The Court explained:

> If the employer fires the male employee for no reason other than the fact he is attracted to men, the employer discriminates against him for traits or actions it tolerates in his female colleague. Put differently, the employer intentionally singles out an employee to fire based in part on the employee's sex, and the affected employee's sex is a but-for cause of his discharge. Or take an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female. If the employer retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth. Again, the individual employee's sex plays an unmistakable and impermissible role in the discharge decision.

*Id*. at 1741-42.

Yet *Bostock* also makes clear that an employer does *not* violate Title VII—and does *not* engage in "sex" discrimination—if it fires an employee for conduct or personal attributes that it would *not* tolerate in an employee of the opposite biological sex:

> Take an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team. Assuming the employer would not have tolerated the same trait in a man, Title VII stands silent.

*Id*. at 1742. This means that a statutory prohibition on "sex" discrimination does not prohibit discrimination against bisexuals, so long as the employer regards bisexual

behavior or orientation as equally unacceptable in a man or a woman. It also means that health-care providers do not engage in "sex" discrimination if they refuse treatments that they would also withhold from an identically situated member of the opposite biological sex.

There are many situations in which a health-care provider might refuse to provide "gender-affirming" care to a transgender patient without violating the statutory prohibition on "sex" discrimination. For example:

- A provider might refuse to prescribe puberty blockers to a 10-year-old boy who wants to transition. But this does not qualify as "sex" discrimination under *Bostock* as long as the provider would equally refuse to prescribe the exact same drugs to a 10-year-old girl who requests them.

- A provider might refuse to provide testosterone therapy to a 15-year-old girl who is attempting to transition. But this does not qualify as "sex" discrimination under *Bostock* as long as the provider would equally refuse to provide the exact same therapy to a 15-year-old boy who wants testosterone supplements for bodybuilding or other purposes.

- A provider might refuse to perform or provide referrals for a sex-change operation requested by a 13-year-old boy who wants his genitals amputated or altered for transitioning purposes. But that does not qualify as "sex" discrimination under *Bostock* as long as the provider would provide the same response to a 13-year-old girl who requests a sex-change operation.

Policies of this sort obviously have a disparate impact on transgender patients—and they might even be seen as discriminating against the transgender community by withholding services that their members are likely to request. But that is not a problem under section 1557 or *Bostock*, which prohibits discrimination on account of "sex"—and not "gender identity." *See Bostock*, 140 S. Ct. at 1746-47 ("We agree that homosexuality and transgender status are distinct concepts from sex."). Refusals to provide puberty blockers, hormone therapy, or sex-change operations are entirely permissible under *Bostock*, so long as the health-care provider would also withhold those services

from an identically situated member of the opposite biological sex. *See Bostock*, 140 S. Ct. at 1742 ("Take an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team. Assuming the employer would not have tolerated the same trait in a man, Title VII stands silent.").

The Secretary's notification sweeps too broadly by insisting that section 1557 and *Bostock* prohibit all forms of discrimination on the basis of "sexual orientation" and "gender identity." *Bostock* did not enact the Equality Act by judicial decree, and it permits health-care providers to discriminate against homosexual and transgender patients so long as they do so pursuant to sex-neutral rules that apply equally to men and women. The Secretary's interpretation of section 1557 and *Bostock* is contrary to law, and his notification of May 10, 2021, should be set aside under section 706 of the APA. *See* 5 U.S.C. § 706(2)(A).

### III. The Court Should Enter A Declaratory Judgment That Section 1557 Does Not Prohibit All Discrimination On Account Of "Sexual Orientation" And "Gender Identity"

The Court should also enter a declaratory judgment that section 1557 does not prohibit *all* forms of discrimination on the basis of "sexual orientation" or "gender identity." It prohibits only discrimination on account of "sex"—and it allows health-care providers to take discriminatory actions with respect to a homosexual, bisexual, or transgender patient as long as that provider would have acted in the same manner had the patient had been a member of the opposite biological sex.

#### A.   The Court May Award Declaratory Relief Under Either 28 U.S.C. § 2201 Or 5 U.S.C. § 702

The Secretary has complained that the plaintiffs lack a "cause of action" for their declaratory-judgment claim. *See* Defs.' Br. in Support of Mot. to Dismiss, ECF No. 16, at 29. But the plaintiffs have a cause of action to pursue this relief under both the Declaratory Judgment Act and the Administrative Procedure Act.

The Declaratory Judgment Act authorizes defendants in an anticipated lawsuit to seek a judicial declaration of their rights before they are sued. *See* 28 U.S.C. § 2201(a); John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 1014 (2008) ("[T]he Declaratory Judgment Act . . . authorizes parties who otherwise would be only defendants to become plaintiffs."); David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 45-46. The Secretary claims that the Fifth Circuit has rejected the notion that the Declaratory Judgment Act can provide an "independent" cause of action. *See* Defs.' Br. in Support of Mot. to Dismiss, ECF No. 16, at 29 (citing authorities). But those cases hold only that the Declaratory Judgment Act cannot create a cause of action when there is no cause of action that would authorize the *anticipated* lawsuit. *See Harris County v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) ("[T]he Declaratory Judgment Act *alone* does not create a federal cause of action." (emphasis added)); *Okpalobi v. Foster,* 244 F.3d 405, 423 n.31 (5th Cir. 2001) (en banc) ("[T]he Declaratory Judgment Act . . . does not provide an *additional* cause of action with respect to the underlying claim." (emphasis added)); *see also Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1982) ("28 U.S.C. § 2201 . . . does not provide an *independent* cause of action for determination of the constitutionality of a statute" (emphasis added)). In a declaratory-judgment claim, the relevant cause of action is the declaratory *defendant's* anticipated lawsuit against the declaratory plaintiff. *See Lowe v. Ingalls Shipbuilding, A Division of Litton Systems, Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("[T]he underlying cause of action which is thus actually litigated is the declaratory defendant's, not the declaratory plaintiff's"). That is what courts look to in determining whether a claim "arises under" federal law,[3] and that is what courts

---

3. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950) (noting that the well-pleaded complaint rule in federal declaratory-judgment actions is applied to declaratory defendant's anticipated lawsuit).

look to when determining whether a cause of action exists. *See Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) ("Since it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action."); *Green Valley Special Utility District v. City of Schertz*, 969 F.3d 460, 500 (5th Cir. 2020) (Oldham, J., concurring) ("[T]he Declaratory Judgment Act . . . does not create a *standalone* cause of action. Rather, . . . [i]t allows parties who would otherwise be defendants to seek relief as plaintiffs." (emphasis added)). There is no dispute that Secretary Becerra and the United States have a cause of action to sue those who violate section 1557. *See* 42 U.S.C. § 18116(a) ("The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection."). Nothing more is needed to establish a cause of action in a declaratory-judgment suit. *See Collin County*, 915 F.2d at 170 ("The Declaratory Judgment Act is designed to afford parties, threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy. . . . [A] party who has an interest in the outcome of future litigation can petition the court for a declaration of its rights and liabilities."); *Green Valley*, 969 F.3d at 500 (Oldham, J., concurring).

Even if the Declaratory Judgment Act failed to supply a cause of action, the plaintiffs have a separate and independent cause of action under 5 U.S.C. § 704 and may seek and obtain declaratory relief as part of their APA claim. *See* 5 U.S.C. § 702 (allowing plaintiffs to seek "relief other than money damages" when challenging agency action under the APA).

### B. The Plaintiffs Are Entitled To Declaratory Relief

*Bostock*'s holding extends only to acts that discriminate on the basis of biological sex, by making an individual's sex a but-for cause of the allegedly discriminatory action. *See Bostock*, 140 S. Ct. at 1739 ("So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law."); *id*. at 1741 ("[I]f changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred."). The question to ask under *Bostock* is whether anything would have changed if the individual's biological sex had been different. It is not to ask whether a health-care provider is discriminating on account of "sexual orientation" or "gender identity." If a health-care provider withholds services from a homosexual or transgender patient, but would have withheld those same services from an identically situated member of the opposite biological sex, then he cannot be guilty of "sex" discrimination—and he cannot be guilty of violating section 1557. The Court should enter declaratory relief to this effect.

The Secretary claims that this interpretation of *Bostock* is wrong, and that *Bostock* prohibits all discrimination of whatever form on the basis of sexual orientation or gender identity. But that stance cannot be squared with the language of the *Bostock* opinion. Consider once again the key passage from the Court's opinion:

> Take an employer who fires a female employee for tardiness or incompetence or simply supporting the wrong sports team. Assuming the employer would not have tolerated the same trait in a man, Title VII stands silent.

*Bostock*, 140 S. Ct. at 1742. A healthcare provider who discriminates against *all* bisexual patients—regardless of whether they are male or female—cannot possibly be engaged in "sex" discrimination under *Bostock*. That is because the "same trait" (sexual attraction toward members of both sexes) is treated exactly the same regardless of whether that "trait" appears in a man or a woman. The Secretary has no answer to

this passage from *Bostock*, and he has not explained how discrimination against bisexuals can qualify as "sex" discrimination under the terms of the Title IX or section 1557.

The Secretary has also failed to explain how a refusal to provide an identical medical treatment to men and women can qualify as "sex" discrimination, either under the text of Title IX or under *Bostock*. If a health-care provider subjects men and women to the exact same rules, and refuses to prescribe the identical hormone therapy regardless of the sex of the patient who asks for it, then it is impossible for the provider to have discriminated "on the basis of sex." 20 U.S.C. § 1681(a). To hold otherwise would effectively amend the text of Title IX by converting its prohibition on "sex" discrimination into a statute that outlaws discrimination on account of sexual orientation and gender identity—which is exactly what *Bostock* said it was *not* doing. *See Bostock*, 140 S. Ct. at 1746–47 ("We agree that homosexuality and transgender status are distinct concepts from sex.").

The Secretary has also observed that *Bostock* rejected the idea that employers could establish a sex-neutral rule of conduct by prohibiting "homosexual behavior" and extending that rule equally to men and women. *See Bostock*, 140 S. Ct. at 1741–42; *id*. at 1745–46. But that is because the Court held that the relevant prohibition could not be defined at that level of abstraction, and insisted that one must instead look to the employee's precise behavior (sexual attraction to a particular person) and then ask whether that exact situation would be tolerated in a member of the opposite biological sex. *See Bostock*, 140 S. Ct. at 1741 ("Consider, for example, an employer with two employees, both of whom are attracted to men. The two individuals are, to the employer's mind, materially identical in all respects, except that one is a man and the other a woman. If the employer fires the male employee for no reason other than the fact he is attracted to men, the employer discriminates against him for traits or actions it tolerates in his female colleague."). No such maneuver can be used to defeat

the sex-neutral rules of conduct that appear throughout the plaintiffs' complaint. *See* First Amended Complaint, ECF No. 11, at ¶¶ 10–20, 47–48

It is understandable that the Secretary would chafe at the formalism of this argument. But *Bostock* is a formalistic ruling—and the entire *Bostock* regime is premised on a hyper-formalistic reading of statutory text. One cannot abandon the formalism of *Bostock* because it might lead to untoward or disagreeable results. And a court must bear in mind that there is *no* federal statute that outlaws discrimination on account of sexual orientation or gender identify. Any prohibited practice under section 1557 must be derived from a statutory prohibition on "sex" discrimination—and a healthcare provider cannot discriminate on the basis of sex when enforcing rules or policies that apply equally to men and women.

## CONCLUSION

The plaintiffs' motion for summary judgment should be granted.

Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| GENE P. HAMILTON | JONATHAN F. MITCHELL |
| Virginia Bar No. 80434 | Texas Bar No. 24075463 |
| Vice-President and General Counsel | Mitchell Law PLLC |
| America First Legal Foundation | 111 Congress Avenue, Suite 400 |
| 300 Independence Avenue SE | Austin, Texas 78701 |
| Washington, DC 20003 | (512) 686-3940 (phone) |
| (202) 964-3721 (phone) | (512) 686-3941 (fax) |
| gene.hamilton@aflegal.org | jonathan@mitchell.law |
| | |
| | *Counsel for Plaintiffs and* |
| Dated: August 5, 2022 | *the Proposed Class* |

## CERTIFICATE OF SERVICE

I certify that on August 5, 2022, I served this document through CM/ECF upon:

JEREMY S.B. NEWMAN
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
(202) 532-3114 (phone)
(202) 616-8460 (fax)
jeremy.s.newman@usdoj.gov

*Counsel for Defendants*

        /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs and
the Proposed Class*