IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION
_____

SUSAN NEESE, M.D., *et al.*,

      Plaintiffs,

v.

XAVIER BECERRA, *et al.*,

      Defendants.

Civil Action No. 2:21-cv-163-Z


**OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

CHAD E. MEACHAM
UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:    214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

Jeremy S.B. Newman (Mass. Bar No. 688968)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
Tel: (202) 532-3114
Email: jeremy.s.newman@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

BACKGROUND ..................................................................................................................3

LEGAL STANDARD ...........................................................................................................3

ARGUMENT.......................................................................................................................4

I.    Plaintiffs Lack Article III Standing and Thus Cannot Represent the
      Proposed Class.........................................................................................................4

II.   Plaintiffs' Proposed Class Fails to Meet the Requirements of Rule 23(a) .....................5

      A.    Plaintiffs' Proposed Class Fails Rule 23(a)(2)'s Commonality Requirement .................5

      B.    Plaintiffs Fail Rule 23(a)(3)'s Typicality Requirement..........................................9

      C.    Plaintiffs Cannot Adequately Protect the Interests of the Class...................11

      D.    Plaintiffs Fail to Show Their Proposed Class Meets the Numerosity Requirement .13

III.  Plaintiffs Fail to Establish that the Proposed Class Is Clearly Ascertainable............14

IV.   The Proposed Class Fails to Comply With Rule 23(b)(2) ...........................................15

V.    The Proposed Class Lacks Article III Standing.........................................................16

CONCLUSION ..................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................................11

*Berger v. Compaq Computer Corp.,*
257 F.3d 475 (5th Cir. 2001) ................................................................................11

*Bertulli v. Indep. Ass'n of Cont'l Pilots,*
242 F.3d 290 (5th Cir. 2001) ..................................................................................4

*DeBremaecker v. Short,*
433 F.2d 733 (5th Cir. 1970) ..................................................................................4

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) .................................................................................16

*Flecha v. Medicredit, Inc.,*
946 F.3d 762 (5th Cir. 2020) ..........................................................4, 14, 16, 17

*Franciscan All., Inc. v. Becerra,*
553 F. Supp. 3d 361 (N.D. Tex. 2021) ..............................................................10

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) ............................................................................................5, 9

*In re Deepwater Horizon,*
785 F.3d 1003 (5th Cir. 2015) .............................................................................16

*J.D. v. Azar,*
925 F.3d 1291 (D.C. Cir. 2019) .....................................................................11, 12

*James v. City of Dallas,*
254 F.3d 551 (5th Cir. 2001) ............................................................................9, 10

*John v. Nat'l Sec. Fire & Cas. Co.,*
501 F.3d 443 (5th Cir. 2007) ...........................................................................4, 14

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ................................................................................................17

*M.D. ex rel. Stukenberg v. Perry,*
675 F.3d 832 (5th Cir. 2012) .......................................................................3, 4, 15

*Maldonado v. Ochsner Clinic Found.,*
493 F.3d 521 (5th Cir. 2007) .................................................................................15

*Oreck Direct, LLC v. Dyson, Inc.,*
   560 F.3d 398 (5th Cir. 2009) ........................................................................................................10

*Rivera v. Wyeth-Ayerst,*
   *Lab'ys.,* 283 F.3d 315 (5th Cir. 2002) ...........................................................................................4

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021) ...............................................................................................................16

*Valenzuela v. Swift Beef Co.,*
   No. 3:06-CV-2322-N, 2009 WL 10677935 (N.D. Tex. Jan. 13, 2009) .....................................15

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) .............................................................................................................*passim*

*Whitman-Walker Clinic, Inc. v. U.S. Dept. of Health and Human Servs.,*
   485 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................................12, 14

## STATUTES

U.S.C. § 18116 ...............................................................................................................................14

## RULES

Fed. R. Civ. P. 5 ............................................................................................................................19

Fed. R. Civ. P. 23 .....................................................................................................................*passim*

## INTRODUCTION

In this putative class action, Plaintiffs Susan Neese ("Dr. Neese") and James Hurly ("Dr. Hurly," and collectively with Dr. Neese, "Plaintiffs") seek to represent a broad nationwide class of all health care providers who receive federal financial assistance, even though many members of the proposed class disagree with Plaintiffs and do not share their interests or claims of injury. Plaintiffs believe that federal law should not, and does not, prohibit discrimination on the basis of gender identity and sexual orientation in health care. Other health care providers believe fervently that federal law should, and does, prohibit such discrimination. Plaintiffs contend that they would be injured if the government's view were to prevail that federal law prohibits discrimination on the basis of gender identity and sexual orientation in health care. Other health care providers contend that they would be grievously injured if such federal antidiscrimination protections were removed, the result that Plaintiffs seek in this lawsuit.

The class action device was not designed to accommodate people with such varied and conflicting views and interests. To the contrary, Rule 23 contains several safeguards designed to ensure that a class is sufficiently cohesive that a class representative can adequately represent the common interests of all class members. Plaintiffs' proposed class fails to satisfy Rule 23's requirements. Plaintiffs seek to represent a class of "all health-care providers subject to section 1557 of the Affordable Care Act." Br. in Supp. of Mot. for Class Certification 1, ECF No. 45 ("Pls. Class Cert. Br."). Plaintiffs seek, on behalf of this proposed class, an order "set[ting] aside" the Department of Health and Human Services' ("HHS") May 10, 2021 Notification, First Amended Compl., Ex. A, ECF No. 11-1 ("Notification"), that HHS will interpret and enforce Section 1557 of the Affordable Care Act's prohibition on discrimination on the basis of sex to include discrimination on the basis of sexual orientation and discrimination on the basis of gender identity. *See* Plaintiffs' Br. in Supp. of Mot. for Summ. Judg. 1, ECF No. 47 ("Pls. SJ Br."). Plaintiffs also seek, on behalf of the proposed

class, a declaration that Section 1557 "does not prohibit discrimination on account of 'sexual orientation' and 'gender identity.'" *Id.*

Yet much of the class has interests opposed to Plaintiffs. Indeed, many health care providers and medical organizations have expressed support for the very Notification that Plaintiffs attack as unlawful, or have challenged the previous administration's efforts to reject federal prohibitions of discrimination on the basis of gender identity and sexual orientation in health care. Some members of Plaintiffs' proposed class have filed lawsuits alleging that they will be injured if Section 1557 is determined not to prohibit discrimination on the basis of sexual orientation and gender identity. As a result of these conflicts among the proposed class, Plaintiffs cannot adequately protect the interests of the proposed class members, Plaintiffs' claims are not typical of the claims of the proposed class, and questions common to the class are lacking.

Nor could the defective proposed class be saved by narrowing it to include only those health care providers with interests aligned with Plaintiffs, because such a class would fail to satisfy the requirement of a clearly ascertainable class. Plaintiffs also have not shown that such a class would be sufficiently numerous to justify class certification. As Dr. Hurly admitted at deposition, while many health care providers would oppose this lawsuit, he has no way of ascertaining which health care providers would support it and which would oppose it.

This Court recently rejected broad classes proposed by Plaintiffs' counsel in another lawsuit that, much like this one, asked this Court to weigh in on a culturally salient issue on which interests of the proposed class were divided. In *Deanda v. Becerra*, a parent sued to enjoin HHS from funding family-planning grantees that distributed contraception to minors without parental notification or consent, seeking to represent classes of "all parents of minor children in the State of Texas" and "all parents of minor children in the United States." Order, *Deanda v. Becerra*, Case No. 2:20-cv-00092-Z, ECF No. 45, at 3 (N.D. Tex. Feb. 15, 2022) ("*Deanda*"). This Court concluded that the proposed

classes were fatally flawed because "[t]here are likely many would-be members in the broad proposed classes who would oppose Plaintiff's contention" and "[h]ighly individualized facts as to differing manners of parental rearing and unique family circumstances determine which absent members share the injury Plaintiff asserts." *Id.* at 8. Like the proposed classes in *Deanda*, this proposed class here improperly contains many members who have interests that conflict with Plaintiffs' interests and who do not share Plaintiffs' contentions or alleged injury. Certification here would not advance the function of a class action, which is to "permit[] an individual to sue on behalf of everyone injured in the same wrongdoing." *Id.* at 1.

## BACKGROUND

Defendants respectfully refer to the more detailed background statement in their Brief in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Defs. SJ. Br."), submitted contemporaneously with this brief. Plaintiffs have moved to certify a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure consisting of "[a]ll health-care providers subject to section 1557 of the Affordable Care Act." Motion for Class Certification, ECF No. 44.

## LEGAL STANDARD

"To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). "Rule 23(a) defines four class-certification requirements: (1) 'the class [be] so numerous that joinder of all members is impracticable'; (2) 'there are questions of law or fact common to the class'; (3) 'the claims or defenses of the representative parties are typical of the claims or defenses of the class'; and (4) 'the representative parties will fairly and adequately protect the interests of the class.'" *Deanda*, at 2 (quoting Fed. R. Civ. P. 23(a)). "[T]he plaintiff bears the burden to prove 'affirmative compliance' with Rule 23(a)'s requirements," *id.* at 3 (quoting *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 350 (2011)), and "[a] court must subject a class-certification pleading to 'rigorous analysis,'" *id.* (quoting *Stukenberg*, 675 F.3d at 837).  In addition to Rule 23(a)'s four explicit requirements, "Rule 23 implies the existence of an ascertainable class."  *Id.* at 2 (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)).  "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."  *Id.* (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).

Plaintiffs seek to certify the proposed class under Rule 23(b)(2).  *See* Pls. Class Cert. Br. 5.  "Rule 23(b)(2) requires a plaintiff to demonstrate a defendant has 'acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"  *Deanda*, at 3 (quoting Fed. R. Civ. P. 23(b)(2)).

## ARGUMENT

### I.   Plaintiffs Lack Article III Standing and Thus Cannot Represent the Proposed Class

"[B]ecause it determines the court's fundamental power even to hear the suit," the class representative's demonstration of "standing is an inherent prerequisite to the class certification inquiry."  *Rivera v. Wyeth-Ayerst Lab'ys.*, 283 F.3d 315, 319 (5th Cir. 2002) (quoting *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001)).  When "it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification."  *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020).  "After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise."  *Id.*

Defendants have shown in their summary judgment brief, filed contemporaneously with this brief, that Dr. Neese and Dr. Hurly have failed to meet their burden to show that they have Article III standing.  *See* Defs. SJ Br. 11-17.  Defendants incorporate that argument here.  To summarize, Dr. Neese and Dr. Hurly lack standing to challenge HHS's interpretation that Section 1557 prohibits discrimination on the basis of sexual orientation because they do not intend to discriminate on the

basis of sexual orientation and admit they were not injured by HHS's interpretation.  *Id.* at 13-14. Plaintiffs also lack standing to challenge HHS's interpretation that Section 1557 prohibits discrimination on the basis of gender identity because they face no credible threat of future enforcement, given that HHS has stated in a notice of proposed rulemaking that it does not regard behavior of the kind that Plaintiffs anticipate engaging in — providing medically appropriate preventive and diagnostic care related to a transgender patient's biological sex characteristics (e.g., providing care for the prostate of a transgender woman or providing care for the cervix or ovaries of a transgender man), and declining to provide services that are not within a provider's area of specialty — to constitute discrimination.  *Id.* at 14-17.

## II.     Plaintiffs' Proposed Class Fails to Meet the Requirements of Rule 23(a)

### A.      Plaintiffs' Proposed Class Fails Rule 23(a)(2)'s Commonality Requirement

Rule 23's commonality prerequisite to class certification "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Further, class members' "claims must depend upon a common contention . . . capable of classwide resolution."  *Id.*  Plaintiffs' contention is that Section 1557 does not prohibit discrimination on the basis of sexual orientation and gender identity, and accordingly the Notification that interprets Section 1557 to prohibit such discrimination is unlawful. *See* Pls. SJ Br. 1.  Plaintiffs' claimed injury is that they intend to engage in medical practices that they believe HHS would deem to be prohibited discrimination on the basis of gender identity.  *Id.* at 2-3.

However, many members of the proposed class do not share Plaintiffs' contention or claimed injury.  Several health care providers or organizations representing health care providers, including the American Medical Association, GLMA: Health Professionals Advancing LGBTQ Equity (f/k/a Gay and Lesbian Medical Association), Planned Parenthood, and Kaiser Permanente, issued press releases strongly applauding the Notification, showing that they do not support Plaintiffs' contention that the

Notification is unlawful, nor were they injured by the Notification. *See, e.g.*, AMA Press Release, Hurly Dep. Ex. 7, at 1, A221[1] ("The Biden administration did the right thing . . . the AMA welcomes this common-sense understanding of the law."); GLMA Press Release, Hurly Dep. Ex. 8, at 1, A226 ("We at GLMA applaud HHS Secretary Xavier Becerra for his leadership and the Biden administration for its commitment to improving the lives and advancing the health of LGBTQ people."); Planned Parenthood Press Release, Hurly Dep. Ex. 9, at 2, A228 ("We thank Secretary Becerra and the Biden-Harris administration for taking this critical step to better ensure health care access for all."); Kaiser Permanente Press Release, Hurly Dep. Ex. 10, at 1, A230 ("Kaiser Permanente applauds the U.S. Department of Health and Human Services for updating, effective immediately, its interpretation of the nondiscrimination protections in the Affordable Care Act to include gender identity and sexual orientation.").

Many health care providers or organizations representing health care providers likewise publicly opposed efforts of HHS during the prior administration to interpret Section 1557 not to reach discrimination on the basis of sexual orientation or gender identity — again showing that many health care providers who would be members of the proposed class actually would oppose Plaintiffs' contention in this case and do not share Plaintiffs' claims of injury. For example, when HHS proposed a rule in 2019 that would eliminate explicit language prohibiting gender identity discrimination from the government's interpretation of Section 1557, many health care providers and organizations, including the Endocrine Society, National Association of Pediatric Nurse Practitioners ("NAPNAP"), and Alameda Health System, issued comments opposing the proposed rule. *See* Endocrine Society

---

[1] Citations to "A___" are to Defendants' Appendix, submitted concurrently with this brief. Because Defendants are also concurrently submitting their Brief in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, and significant overlap exists in the portions of the record relevant to the two briefs, Defendants have prepared a single Appendix that covers both this brief and Defendants' summary judgment brief.

Comment, Hurly Dep. Ex. 11, at 1, A232 ("The rule proposes to eliminate specific nondiscrimination protections based on sex and gender identity. **We oppose the proposed rule.** If finalized, this rule will threaten women and transgender individuals' access to care and health insurance, create confusion among providers and patients about their rights and obligations, and promote discrimination against vulnerable populations that already struggle to access health care."); NAPNAP Comment, Hurly Dep. Ex. 12, at 2, A237 ("The proposed rule would eliminate specific protections on the basis of sex, including the 2016 rule's provisions related to gender identity nondiscrimination. . . . NAPNAP opposes these proposals, all of which would threaten LGBTQ patients' access to health care and coverage."); Alameda Health Comment, Hurly Dep. Ex. 13, at 1, A241 ("We strongly oppose the NPRM provisions which seek to eliminate and limit protections for individuals such as . . . LGBTQ persons. . . . Removing gender identity . . . from the definition of prohibited sex-based discrimination undermines the rights and welfare of LGBTQ persons and their families.").

Likewise, in response to the final rule that HHS issued after that proposed rule, which did not include explicit protections from discrimination on the basis of sexual orientation or gender identity, the American College of Physicians, a membership organization that "includes 159,000 internal medicine physicians (internists), related subspecialists, and medical students," announced that it "strongly condemn[ed] the recent announcement from the Trump administration that does away with federal protections under the Affordable Care Act for transgender and other individuals seeking health care." American College of Physicians Press Release, Hurly Dep. Ex. 15, at 1-2, A328-A329.

A group of plaintiffs including two health care facilities, two national associations of health professionals, three individual physicians and one behavior health provider sued HHS in federal court to challenge the lawfulness of that rule implementing Section 1557, which did not include a definition of "sex discrimination," in contrast to the prior rule that explicitly defined sex discrimination to include discrimination on the basis of gender identity. Complaint for Declaratory and Injunctive Relief,

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health and Human Servs.*, Case 1:20-cv-01630 (D.D.C. filed June 22, 2020), Hurly Dep. Ex. 14, ¶ 31, A252-A253. Those plaintiffs took the exact opposite position to Plaintiffs' position here on the implications of *Bostock* for Section 1557, contending that "*Bostock*'s holding that discrimination on the basis of sexual orientation or transgender status constitutes discrimination on the basis of sex forecloses HHS's attempts to deny the full protection of Section 1557 to LGBTQ individuals and patients in health care settings." *Id.* ¶ 15, A249; *see also id.* ¶¶ 93-101 (A275-A277), 242-43 (A315). Those plaintiffs claimed that they were injured by HHS's alleged rejection of the position that Section 1557 prohibited discrimination on the basis of sexual orientation and gender identity. *Id.* ¶¶ 178-224, A297-A312.[2]

Dr. Hurly rightly conceded that based on their public stances in support of federal protections against discrimination on the basis of gender identity or sexual orientation, each of those health care providers or organizations representing health care providers "would oppose" this lawsuit. Hurly Dep. Tr. 35:1-7, A187 ("Q. In this the press release, GLMA expressed support for the notification that you're challenging [as] unlawful, correct? A. Correct. Q. Based on this press release, do you believe that the health care professionals in GLMA would support or oppose your lawsuit? A. They would oppose my lawsuit."); *see also id.* 33:19-22 (A185), 36:16-18 (A188), 37:18-20 (A189), 39:10-12 (A191), 41:4-7 (A193), 43:12-14 (A195), 45:8-11 (A197), 47:6-9 (A199) (similar for other organizations). It is likely that many other health care providers who share these views would also oppose the lawsuit. *See* Hurly Dep. Tr. 47:19-21, A199 (acknowledging that "many health care providers subject to Section 1557 would oppose [this] lawsuit"); Neese Dep. Tr. 42:17-43:3, A133-

---

[2] The *Whitman-Walker* lawsuit was not the only lawsuit to assert such claims. *See, e.g.*, Complaint, *Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth (BAGLY) v. U.S. Dep't of Health & Human Servs.*, Case 1:20-cv-11297-PBS, ¶¶ 20, 26-41, 199-208, 378-80 (D. Mass. filed July 9, 2020) ("*BAGLY* Compl.") (complaint filed by several health care providers and other plaintiffs raising similar claims).

A134 (testifying that "[t]here are many lesbian, gay, bisexual, and transgender doctors in this country," and "I don't believe they would" "want the court to issue a declaration that Section 1557 does not prohibit discrimination on account of sexual orientation and gender identity"). The fact that so many proposed class members share neither Plaintiffs' contention nor their claimed injury is fatal to class certification.

Plaintiffs argue that they satisfy the commonality requirement because the legality of the Notification and the extent to which Section 1557 requires health-care providers to provide gender-affirming care are "questions of law common to all members of the class." Pls. Class Cert. Br. 2. But Plaintiffs take too narrow a view of Rule 23(a)(2)'s requirements. "Rule 23(a)(2) requires not merely the literal raising of 'common questions.'" *Deanda*, at 7 (quoting *Wal-Mart*, 564 U.S. at 350). It also requires a class representative to "present a claim that depends upon a 'common contention' *and* demonstrate that the class members 'have suffered the same injury.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 349-50). In *Deanda*, the plaintiff argued that he presented common legal questions about whether HHS violated parents' constitutional and statutory rights by funding groups that provided contraception to minors without parental consent. *Id.* at 7. But these supposedly common questions were insufficient because "Plaintiff fail[ed] to show a common injury . . . shared between members of [the proposed] classes," and "[t]here are likely many would-be members in the broad proposed classes who would oppose Plaintiff's contention." *Id.* at 8. The same is true here.

### B.    Plaintiffs Fail Rule 23(a)(3)'s Typicality Requirement

 "'Typicality requires that the class representative's claims bear 'the same essential characteristics of those of the putative class.'" *Deanda*, at 9 (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). "The commonality and typicality requirements of Rule 23(a) tend to merge" because "[b]oth serve as guideposts for determining . . . whether the named plaintiff's claim and the

class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13.

Plaintiffs fail the typicality requirement for the same reason they fail the commonality requirement: the proposed class includes many providers who oppose Plaintiffs' legal contentions and who do not share Plaintiffs' claimed injury. Given the "meaningful distinctions in . . . philosophies" on sexual orientation and gender identity discrimination among health care providers, "Plaintiffs['] claims cannot reasonably share 'the same essential characteristics of those of the putative class.'" *Deanda*, at 10 (quoting *James*, 254 F.3d at 571).

Plaintiffs' claims are atypical of the proposed class in other ways as well. For example, Plaintiffs assert that they do not discriminate or wish to discriminate on the basis of sexual orientation, and they have admitted that they were not injured by HHS's interpretation that Section 1557 prohibits discrimination on the basis of sexual orientation. *See* Defs. SJ Br. 13-14; Neese Dep. Tr. 22:8-23:16, A113-A114; Hurly Dep. Tr. 17:3-18:2, A169-A170. Therefore, their claims are atypical of claims of any proposed class members who wish to discriminate on the basis of sexual orientation. Moreover, Plaintiffs do not have religious objections to providing gender-affirming care. *See* Neese Rog. Resp. 9, A9; Hurly Rog. Resp. 6, A53. That makes their claims atypical of those proposed class members with religious objections to providing gender-affirming care. *See, e.g.*, *Franciscan All., Inc. v. Becerra*, 553 F. Supp. 3d 361 (N.D. Tex. 2021), *appeal pending* No. 21-11174 (5th Cir.) (adjudicating claims of health care providers with religious objections to providing gender-affirming care). That distinction is meaningful because the Notification states that in enforcing Section 1557, HHS "will comply with the Religious Freedom Restoration Act," ECF No. 11-1, at 3, which under some circumstances entitles parties to religious exemptions from generally applicable laws.[3]

---

[3] The proposed class improperly includes former Plaintiff Dr. Jeffrey Barke, who voluntarily dismissed his claims with prejudice. ECF No. 39. Dr. Barke's claims are precluded by res judicata,

### C.    Plaintiffs Cannot Adequately Protect the Interests of the Class

"The adequacy inquiry . . . 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997)). "[B]ecause absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Id.* at 480. Here, conflicts exist that would prevent Plaintiffs from adequately representing all class members because much of the class is opposed to the relief sought by Plaintiffs. The sources cited above, *see supra* pp. 5-8, show that many health care providers support the Notification, do not want it set aside as unlawful, and want Section 1557 to be interpreted to prohibit discrimination on the basis of gender identity and sexual orientation. Some proposed class members have interests so strongly opposed to Plaintiffs that they have filed lawsuits in federal court seeking the opposite relief that Plaintiffs seek, a ruling setting aside the prior administration's Section 1557 regulation on the ground that it purportedly did not prohibit discrimination on the basis of gender identity, and taking the same position articulated in the Notification concerning the application of Section 1557 to discrimination on the basis of sexual orientation and gender identity. *See Whitman-Walker* Complaint, Hurly Dep. Ex. 14, A243; *BAGLY* Compl. Given that the proposed class "consists of members that possess conflicting interests," Plaintiffs cannot be adequate representatives. *Deanda*, at 10.

Plaintiffs do not dispute that "there are class members who support Secretary Becerra's notification and disagree with Dr. Neese and Dr. Hurly" on the issues in this case, but they argue that they are nonetheless adequately representing these proposed class members by seeking a "ruling that

---

*see Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009), so he cannot be a class member, nor are Plaintiffs' claims typical of Dr. Barke's claims.

gives them the *option*" to discriminate on the basis of sexual orientation and gender identity. Pls. Class. Cert. Br. 4. Plaintiffs argue that *J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019), which certified a class of pregnant unaccompanied alien children in the custody of the Office of Refugee Resettlement in a lawsuit seeking to secure abortion access for the class, supports their position. But the *J.D.* court found that by failing to raise the argument in the district court, the government had waived the argument that the presence of class members ideologically opposed to the class relief precluded class certification. *Id.* at 1316. Moreover, *J.D.* is distinguishable because it relied on the conclusion that no class member would be harmed by class relief. *See id.* at 1314 ("The remedy sought by the class thus will have no deleterious effect on the care received by absent class members.").[4]

By contrast, here, class members have claimed they would be harmed by the relief sought by Plaintiffs. In the *Whitman-Walker* lawsuit, the court determined that two health care facilities that served the LGBTQ community (Whitman-Walker Clinic and Los Angeles LGBT Center) had adequately alleged that they suffered "financial and operational injuries" from the removal of federal protections against discrimination on the basis of gender identity because "growing numbers of LGBTQ patients are likely to turn to their organizations for health-care services given the patients' augmented fear of discrimination at the hands of external providers," which would "exacerbate pressure on already constrained budgets." *Whitman-Walker Clinic, Inc. v. U.S. Dept. of Health and Human*

---

[4] In *Deanda*, this Court addressed *J.D.* and found it distinguishable because the class in *J.D.* "was significantly smaller and geographically limited," consisting of several hundred pregnant unaccompanied minors in federal custody, making the class easier to manage. *Deanda*, at 10 n.4. Here, Plaintiffs' proposed nationwide class of every health care provider who receives federal financial assistance is more like the unwieldy classes this Court rejected in *Deanda* than the circumscribed class certified in *J.D.* Moreover, Judge Silberman argued in dissent that the presence of class members "likely to have moral/religious convictions" in opposition to the class relief "is a powerful reason to conclude that the class is improperly certified." *J.D.*, 925 F.3d at 1344 (Silberman, J., dissenting). Judge Silberman's reasoning resembles this Court's conclusion that the likely presence of "many would-be members . . . who would oppose Plaintiff's contention" weighs against certification. *Deanda*, at 8.

*Servs.*, 485 F. Supp. 3d 1, 20-21 (D.D.C. 2020). Far from adequately representing those providers' interests, Plaintiffs are seeking the very result (i.e., removal of federal protections against discrimination on the basis of sexual orientation and gender identity) that a court has concluded would harm those providers.

In addition, many health care providers subject to Section 1557 are themselves lesbian, gay, bisexual, or transgender. *See* Neese Dep. Tr. 42:17-19, A133 (agreeing that "[t]here are many lesbian, gay, bisexual and transgender doctors in this country"); Hurly Dep. Tr. 31:13-15, A183 (same); *Whitman-Walker* Compl., Hurly Dep. Ex. 14, ¶ 45, A260 ("GLMA also represents the interests of hundreds of thousands of LGBTQ health professionals"); *id.* ¶ 46, A260-A261 ("AGLP is a national organization of 450 LGBTQ+ psychiatrists"). If the Court issued the declaration sought by Plaintiffs that Section 1557 "does not prohibit discrimination on account of 'sexual orientation' and 'gender identity,'" Pls. SJ Br. 1, then these class members would not be protected from discrimination in their own access to health care. Plaintiffs accordingly fail to support their assertion that "[n]o member of the class can be harmed or made worse off" by the relief sought by Plaintiffs. Pls. Class. Cert. Br. 3-4.

### D.     Plaintiffs Fail to Show Their Proposed Class Meets the Numerosity Requirement

Plaintiffs fail to show that a proper class would satisfy Rule 23(a)(1)'s numerosity requirement. Plaintiffs rest on the fact that there are more than 1.4 million providers in Medicare, and thus they assert that the class size "easily exceeds 1 million." Pls. Class Cert. Br. 1-2. In *Deanda*, the plaintiff similarly tried to establish numerosity by defining "[o]verly broad classes" of all parents of minor children in Texas or the United States and asserting that the classes consisted of millions of members. *Deanda*, at 6. But that showing was insufficient. The plaintiff needed "to provide evidence of absent class members who would share his contention of harm" because only such members could be part of a proper class. *Id.* As in *Deanda*, Plaintiffs here fail to provide evidence that other class members

share their contention of harm, or that such other class members are numerous. Plaintiffs cannot rest on a presumption that there must be numerous health care providers receiving federal financial assistance who share their contention of harm, because "[c]lass-action certification must be based on 'proof, not presumptions.'" *Id.* at 7 (quoting *Flecha*, 946 F.3d at 768). "[A] failure to provide evidence that demonstrates potential class members share the same injury does not promote judicial economy." *Id.*

## III.    Plaintiffs Fail to Establish that the Proposed Class Is Clearly Ascertainable

"The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." *John*, 501 F.3d at 445. "There can be no class action if the proposed class is 'amorphous' or 'imprecise.'" *Id.* at 445 n.3. The ascertainability requirement is vital because without a "precisely defined" class, a court cannot "properly determine *who* is entitled to relief . . . and ultimately bound by judgment." *Deanda*, at 5.

Plaintiffs' class certification brief makes no effort to show that the proposed class is adequately defined and clearly ascertainable. It does not even mention the ascertainability requirement. Plaintiffs' proposed class includes all health care providers "subject to Section 1557 of the Affordable Care Act." Pls. Class Cert. Br. 1. Section 1557 applies to "any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments)." 42 U.S.C. § 18116(a). Yet Plaintiffs identify no administrable method to determine whether every health care provider in the country participates in any health program or activity, any part of which receives Federal financial assistance. The Court can deny class certification for that reason alone.

Furthermore, as explained above, the proposed class is fatally overbroad—in violation of the commonality, typicality, and adequacy requirements—because it includes class members who do not

share Plaintiffs' contention or claimed injury and have interests opposed to Plaintiffs. Attempting to address these defects by narrowing the class would create an additional ascertainability problem. Plaintiffs identify no way to ascertain the health care providers who support Plaintiffs' contention that Section 1557 does not prohibit discrimination on the basis of sexual orientation or gender identity, and who share Plaintiffs' claimed injury in that they intend to engage in such discrimination. To the contrary, Dr. Hurly admits that while "many health care providers subject to Section 1557 would oppose [this] lawsuit," he does not "have any way of ascertaining which health care providers subject to Section 1557 would support [this] lawsuit and which would oppose it." Hurly Dep. Tr. 47:19-25, A199. Rule 23 requires that "the description of the class must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member." *Valenzuela v. Swift Beef Co.*, No. 3:06-CV-2322-N, 2009 WL 10677935, at *1 (N.D. Tex. Jan. 13, 2009). "It is . . . impossible for the Court to grant relief and enforce judgment over such an amorphous and imprecise group." *Deanda*, at 5. That precludes class certification.

## IV.     The Proposed Class Fails to Comply With Rule 23(b)(2)

Plaintiffs fail to show that their proposed class complies with Rule 23(b)(2). Rule 23(b)(2) requires that "the 'class members must have been harmed in essentially the same way.'" *Stukenberg*, 675 F.3d at 845 (quoting *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007)). That requirement follows from the rule's text, because if class members have not suffered the same harm, then it would not be "appropriate" for the court to grant "injunctive relief or corresponding declaratory relief . . . respecting the class as a whole." Fed. Civ. R. P. 23(b)(2). Certification under this provision is permissible "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

Plaintiffs' proposed class fails to satisfy Rule 23(b)(2) because the class members have not been harmed in the same way, and the injunctive and declaratory relief sought by Plaintiffs would not

provide relief to each member of the class. As shown above, many proposed class members do not wish to discriminate on the basis of sexual orientation or gender identity, they interpret Section 1557 to prohibit discrimination on the basis of sexual orientation and gender identity (as HHS does in the Notification), and they would not want a court to issue a contrary interpretation. *See supra*, p. 11. Therefore, these proposed class members have not been harmed in the same way that Plaintiffs claim to have been harmed, and the judgment sought by Plaintiffs would not provide any relief to these proposed class members. To the contrary, the relief sought by Plaintiffs may harm some class members. *See supra*, pp. 12-13. Ensuring the cohesiveness of claimed harm for a Rule 23(b)(2) class is particularly important because unlike a Rule 23(b)(3) class, a Rule 23(b)(2) class is a "mandatory class[]: The Rule provides no opportunity for . . . (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Wal-Mart*, 564 U.S. at 362. Rule 23(b)(2) cannot be used to force class members who do not share the class representatives' claimed injury into a class against their will.

## V.     The Proposed Class Lacks Article III Standing

Even if Plaintiffs' proposed class could satisfy Rule 23, it fails to satisfy Article III. The Fifth Circuit "has not yet decided whether standing must be proven for unnamed class members, in addition to the class representative." *Flecha*, 946 F.3d at 768 (citing *In re Deepwater Horizon*, 785 F.3d 1003, 1018-20 (5th Cir. 2015)). Nonetheless, the Fifth Circuit has noted that "some circuits have held that 'no class may be certified that contains members lacking Article III standing.'" *Id.* (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)); *cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 & n.4 (2021) (holding that every class member must have standing to obtain relief, but declining to address "the distinct question whether every class member must demonstrate standing *before* a court certifies a class.").

Plaintiffs' lack of standing as the class representatives and the failure of the putative class to satisfy Rule 23 notwithstanding, many members of the putative class also would lack concrete injury in fact that is fairly traceable to the Defendants' actions and redressable by the present action. As shown above, many proposed class members support the Notification and are not injured by it because they do not intend to discriminate on the basis of sexual orientation or gender identity. *See supra*, pp. 5-8. The putative class therefore also lacks standing under Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Flecha*, 946 F.3d at 768.

## CONCLUSION

The Court should deny Plaintiffs' Motion for Class Certification.

Dated August 26, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Jeremy S.B. Newman*
Jeremy S.B. Newman (Mass. Bar No. 688968)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
Tel: (202) 532-3114
Email: jeremy.s.newman@usdoj.gov

CHAD E. MEACHAM
Acting United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:      214-659-8626
Facsimile:       214-659-8807
brian.stoltz@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On August 26, 2022, I caused the foregoing document to be electronically submitted with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Jeremy S.B. Newman*
Jeremy S.B. Newman
Trial Attorney
United States Department of Justice