UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **Susan Neese, M.D** and **James Hurly, M.D.**, on behalf of themselves and others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>**Xavier Becerra**, in his official capacity as Secretary of Health and Human Services; **United States of America**,<br><br>     Defendants. | Case No. 2:21-cv-00163-Z |

**REPLY BRIEF IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

Table of contents ................................................................................................... i

Table of authorities ............................................................................................. ii

    I. The representative plaintiffs have established Article III standing ................. 1

    II. The defendants' commonality, typicality, and adequacy-of-representation objections do not defeat class certification ..................................................... 4

        A. The proposed class satisfies the commonality requirement ...................... 4

        B. The proposed class satisfies the typicality requirement ........................... 5

        C. The plaintiffs are adequate class representatives ....................................... 6

        D. The Court may certify a smaller class of health-care providers ............... 7

    III. The proposed classes are ascertainable ........................................................ 8

    IV. The proposed classes satisfy Article III ....................................................... 9

Conclusion ........................................................................................................ 10

Certificate of service ......................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Biden v. Texas*, 142 S. Ct. 2528 (2022) .................................................................. 3

*Carney v. Adams*, 141 S. Ct. 493 (2020) ................................................................ 2

*Cole v. City of Memphis*, 839 F.3d 530 (6th Cir. 2016) ............................................ 8

*Data Marketing Partnership, LP v. United States Dep't of Labor*,
   45 F.4th 846 (5th Cir. 2022) ............................................................................. 1

*DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970) (per curiam) ......................... 8

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .................................. 10

*Department of Commerce v. New York*, 139 S. Ct. 2551 (2019) ............................. 10

*Driftless Area Land Conservancy v. Valcq*,
   16 F.4th 508 (7th Cir. 2021) .............................................................................. 2

*El Paso Electric Co. v. FERC*, 667 F.2d 462 (5th Cir. 1982) ................................... 2

*Finch v. New York State Office of Children and Family Services*,
   252 F.R.D. 192 (S.D.N.Y. 2008) ........................................................................ 9

*Flecha v. Medicredit, Inc.*, 946 F.3d 762 (5th Cir. 2020) ....................................... 10

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) .......................................................................................... 2

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) ................................. 9

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410, 426 (3d Cir. 2016) ...................................................................... 7

*In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012) ....................................................... 9

*J.D. v Azar*, 925 F.3d 1291 (D.C. Cir. 2019) ................................................. 4, 5, 6

*John v. National Security Fire & Casualty Co.*,
   501 F.3d 443 (5th Cir. 2007) ............................................................................ 8

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020) .................................................................................... 10

*M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012) ............................... 5

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ..................... 9

*Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) ......................................................... 9

*Prantil v. Arkema Inc.*, 986 F.3d 570 (5th Cir. 2021) ............................................ 5

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
   547 U.S. 47 (2006) .......................................................................................... 10

*Shelton v. Bledsoe*, 775 F.3d 554 (3rd Cir. 2015)......................................................................... 8

*Shook v. El Paso County*, 386 F.3d 963 (10th Cir. 2004) ........................................... 9

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ............................................ 10

*Whitman–Walker Clinic, Inc. v. U.S. Dept. of Health and Human Services*, 485 F. Supp. 3d 1 (D.D.C. 2020)......................................................... 7

**Statutes**

5 U.S.C. § 704 ................................................................................................................. 1

5 U.S.C. § 706 ................................................................................................................. 1

**Rules**

Dep't of Health & Human Services, *Nondiscrimination in Health Programs and Activities, Notice of Proposed Rulemaking*, 87 Fed. Reg. 47,824 (Aug. 4, 2022) ........................................................................ 3, 4

**Other Authorities**

Robert G. Bone, *Justifying Class Action Limits: Parsing the Debates over Ascertainability and Cy Pres*, 65 U. Kan. L. Rev. 913 (2017)........................ 8

Michael T. Morley, *Nationwide Injunctions, Rule 23(b)(2), and the Remedial Powers of the Lower Courts*, 97 B.U. L. Rev. 615 (2017) ...................... 9

Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights Roots and Relevance Today*, 66 U. Kan. L. Rev. 325 (2017)................................. 9

## I. The Representative Plaintiffs Have Established Article III Standing

The plaintiffs are asking this Court to: (1) "hold unlawful and set aside" the Secretary's notification of May 10, 2021, under section 706 of the APA; (2) declare that section 1557's prohibition on "sex" discrimination does not prohibit *all* discrimination on account of "sexual orientation" and "gender identity," but only conduct in which the provider would have acted differently toward an identically situated member of the opposite biological sex; and (3) enjoin the Secretary from using or enforcing the interpretation of section 1557 that appears in the notification of May 10, 2021. *See* First Amended Complaint, ECF No. 11, at ¶¶ 44–50.

The defendants try to defeat standing by observing that the plaintiffs are uninjured by the portion of the notification that prohibits discrimination on account of "sexual orientation." *See* Defs.' Br., ECF No. 57, at 4–5. But judicial review under the APA requires courts to review the challenged agency *action*—and to "hold unlawful and set aside" the challenged action if it is "not in accordance with law." 5 U.S.C. § 706 ("The reviewing court shall—. . . (2) hold unlawful and set aside agency *action*, findings, and conclusions found to be—(A) . . . not in accordance with law" (emphasis added)); 5 U.S.C. § 704 ("[F]inal agency *action* for which there is no other adequate remedy in a court are subject to judicial review." (emphasis added)). The plaintiffs are challenging the Secretary's "action" in issuing the notification of May 10, 2021. The plaintiffs' injuries are "fairly traceable" to this action—even if they are not injured by every single word that appears in the notification. And the proper remedy under the APA, upon finding an agency action "not in accordance with law," is to formally revoke the "action," (*i.e.* the notification), rather than merely enjoin the enforcement of the disputed provisions. *See Data Marketing Partnership, LP v. United States Dep't of Labor*, 45 F.4th 846, 2022 WL 3440652, *8 (5th Cir. 2022) ("The APA gives courts the power to 'hold unlawful and set aside agency action[s].' 5 U.S.C.

§ 706(2). . . . [Section] 706 'extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to "set aside"—*i.e.*, formally nullify and revoke—an unlawful agency action.'" (citation omitted)); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021) ("Vacatur [of an agency action] retroactively undoes or expunges a past [agency] action. . . . Unlike an injunction, which merely blocks enforcement, vacatur unwinds the challenged agency action."). The plaintiffs have standing to seek this remedy, even if their injuries arise only from the gender-identity edict.

The defendants also claim that the plaintiffs' injuries have been obviated by the Notice of Proposed Rulemaking, which (according to the defendants) disclaims any interpretation of section 1557 that would prohibit the conduct that the plaintiffs wish to engage in. *See* Defs.' Br., ECF No. 57, at 5. There are many problems with this argument. First, a plaintiff's standing is assessed at the moment the lawsuit is filed and is unaffected by post-filing developments. *See Carney v. Adams*, 141 S. Ct. 493, 499 (2020) ("[S]tanding is assessed 'at the time the action commences'" (citation omitted)). The Notice of Proposed Rulemaking concerns only whether the plaintiffs' claims have become moot. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189–90 (2000) (explaining distinction between standing and mootness). But the defendants are not making a mootness argument, and they cannot show that the Notice of Proposed Rulemaking moots the plaintiffs' claims when the rulemaking process is not complete and the contents of the proposed rule could change between now and when the rule becomes final. *See El Paso Electric Co. v. FERC*, 667 F.2d 462, 467 (5th Cir. 1982) ("A case is not rendered moot simply because there is a possibility, or even a probability, that the outcome of a separate administrative proceeding may provide the litigant with similar relief.").

The second problem is that a notice of proposed rulemaking has no legal force, and it does not withdraw or nullify the earlier agency "action" that the plaintiffs are

challenging. The notice of proposed rulemaking will culminate in a separate and distinct final agency action that can be challenged, but the mere issuance of a notice does nothing to affect the notification of May 10, 2021, or its contents. *See Biden v. Texas*, 142 S. Ct. 2528, 2544–45 (2022) (explaining how separate DHS memoranda that sought to terminate the Migrant Protection Protocol were distinct agency "actions").

The final problem is that the Notice of Proposed Rulemaking does nothing to alleviate the plaintiffs' objections to the Secretary notification of May 10, 2021. The proposed rule goes well beyond *Bostock* by interpreting section 1557's prohibition on "sex" discrimination to encompass "discrimination on the basis of sex stereotypes; sex characteristics, including intersex traits; pregnancy or related conditions; sexual orientation; and gender identity." Dep't of Health & Human Services, *Nondiscrimination in Health Programs and Activities, Notice of Proposed Rulemaking*, 87 Fed. Reg. 47,824, 47,916 (Aug. 4, 2022) (text of proposed 45 C.F.R. § 92.101). It also forbids covered entities to "[d]eny or limit health services, including those that are offered exclusively to individuals of one sex, to an individual based upon the individual's sex assigned at birth, gender identity, or gender otherwise recorded," a prohibition that would appear to compel providers to offer and provide prostate-cancer screenings to biological women who identify as men on the same terms that they would give them to biological men. *See id.* at 47,918 (text of proposed 45 C.F.R. § 92.206(b)(1)). And the supposed "safe harbors" in the proposed rule only reaffirm the legal jeopardy that the plaintiffs will face if they refuse to refer minors for puberty blockers or sex-change operations, or if they refuse to provide "gender-affirming care" to any patient with gender dysphoria. Consider the text of proposed 45 C.F.R. § 92.206(c):

> Nothing in this section requires the provision of any health service where the covered entity has a legitimate, nondiscriminatory reason for denying or limiting that service, including where the covered entity typically declines to provide the health service to any individual or where the covered entity reasonably determines that such health service is not

> clinically appropriate for a particular individual. However, a provider's belief that gender transition or other gender-affirming care can never be beneficial for such individuals (or its compliance with a state or local law that reflects a similar judgment) is not a sufficient basis for a judgment that a health service is not clinically appropriate.

Dep't of Health & Human Services, *Nondiscrimination in Health Programs and Activities, Notice of Proposed Rulemaking*, 87 Fed. Reg. 47,824, 47,916 (Aug. 4, 2022). Terms like "legitimate" or "nondiscriminatory" are in the eye of the beholder — and a provider can only guess as to whether the powers that be at HHS will regard its refusal to provide puberty blockers to a minor as "legitimate" or "nondiscriminatory."

## II. The Defendants' Commonality, Typicality, And Adequacy-Of-Representation Objections Do Not Defeat Class Certification

The defendants try to defeat class certification by pointing out that many absent class members support Secretary Becerra's interpretation of section 1557 and oppose the named plaintiffs' efforts to have it set aside — and they argue that this precludes the plaintiffs from establishing commonality, typicality, or adequacy of representation. Defs.' Br., ECF No. 57, at 5–13. But this does not warrant denial of class certification. *See* Br. in Support of Mot. for Class Cert., ECF No. 45, at 4–5 (citing *J.D. v. Azar*, 925 F.3d 1291, 1313 (D.C. Cir. 2019)). At most, these objections should lead the court to certify a sub-class limited to providers who oppose Secretary Becerra's edict.

### A. The Proposed Class Satisfies The Commonality Requirement

Commonality requires only a single common question of law or fact, and the proposed class satisfies that requirement. *See* Br. in Support of Mot. for Class Cert., ECF No. 45, at 2–3. That some class members may not share the plaintiffs' opposition to Secretary Becerra's interpretation of the statute does not defeat commonality. The common issues in this case are pure questions of law, and the answers to those questions do not turn on whether a particular class member supports or opposes Secretary Becerra's interpretation of section 1557. The plaintiffs are seeking a ruling on the

*legality* of the notification of May 10, 2021, and it does not matter in answering those questions whether some of the class members approve of the Secretary's action.

### B. The Proposed Class Satisfies The Typicality Requirement

The defendants also try to defeat typicality by asserting that individual class members have differing views about Secretary Becerra's interpretation of section 1557, and that not every class member will share the plaintiffs' unwillingness to provide puberty blockers and referrals for sex-change operations to minors, or their unwillingness to provide "gender-affirming care" that is inappropriate in light of a patient's biologically assigned sex. *See* Defs. Br., ECF No. 57, at 9–10. But that does not defeat typicality (or commonality) because the plaintiffs are seeking a declaration of the class members' *right to choose* whether to provide gender-affirming care as envisioned by Secretary Becerra. This presents a legal question common to every class member, and the plaintiffs are not required to show or allege that every single class member will exercise that right in the same manner that they would. *See Prantil v. Arkema Inc.*, 986 F.3d 570, 581–82 (5th Cir. 2021) ("Rule 23(b)(2) does not require 'a specific policy uniformly affecting—and injuring—each [plaintiff] . . . so long as declaratory or injunctive relief "settling the legality of the [defendant's] behavior with respect to the class as a whole is appropriate."'" (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 847–48 (5th Cir. 2012)); *J.D. v Azar*, 925 F.3d 1291, 1313 (D.C. Cir. 2019) (certifying Rule 23(b)(2) class of pro-abortion and anti-abortion women because "[t]he class members all assert a common entitlement to make that choice on their own, free from any veto power retained" by the government).

The defendants also express concern that some class members will have additional objections to the notification that go beyond the plaintiffs' arguments. *See* Defs. Br., ECF No. 57, at 10 (arguing that the plaintiffs' claims are "atypical of claims of any proposed class members who wish to discriminate on the basis of sexual orientation.").

But the plaintiffs are seeking a remedy that will "hold unlawful and set aside" the notification under the APA, and that remedy will satisfy anyone in the class who objects to any requirement set forth in the notification. And in all events, if the Court is persuaded that these differences in opinion among the class members defeat typicality, the proper response is not to deny certification but certify a smaller class of those who share the plaintiffs' views. *See infra* at 7.

### C. The Plaintiffs Are Adequate Class Representatives

The defendants try to drive a wedge between the plaintiffs and the absent class members who are supportive or indifferent toward the Secretary's interpretation of section 1557. *See* Defs. Br., ECF No. 57, at 11–13. But the plaintiffs are not pursuing any relief that would make those absent class members worse off. Providers who wish to continue providing minors with puberty blockers and referrals for sex-change operations will remain free to do so, even if the plaintiffs prevail in this litigation. And any provider may continue providing gender-affirming care that they think appropriate regardless of how this Court ultimately rules on the plaintiffs' claims. A litigant who seeks to vindicate individual rights on behalf of a class should not be denied certification merely because some class members have no interest in exercising those rights. *See J.D. v. Azar*, 925 F.3d 1291, 1313 (D.C. Cir. 2019).

The defendants attempt to distinguish *J.D.* by claiming that some class members will be affirmatively harmed by the relief that the plaintiffs seek. *See* Defs. Br., ECF No. 57, at 12–13. But their theories of harm are dubious and implausible. They point to the Whitman–Walker Clinic and the Los Angeles LGBT Center, which had alleged that the Trump Administration's refusal to extend section 1557's anti-discrimination protections to LGBTQ individuals would "harm" them by increasing their LGBTQ clientele, as those patients would be scared away from seeking services from other health-care providers. *See id.* (citing *Whitman–Walker Clinic, Inc. v. U.S. Dept. of*

*Health and Human Services*, 485 F. Supp. 3d 1, 20–21 (D.D.C. 2020)). But *Bostock* now provides a firm baseline of anti-discrimination protections for LGBTQ individuals, and those protections will remain in place even if the Secretary's notification is held unlawful and set aside. It is also entirely speculative to claim that LGBTQ patients would change health-care providers in response to a decision that holds unlawful or sets aside the Secretary's notification. Finally, it is far from clear that a health-care provider will be "harmed" by an increased demand for its services; that is typically regarded as a positive development by any entity that provides services to the general public.

### D. The Court May Certify A Smaller Class Of Health-Care Providers

If the Court is unwilling to certify the class as initially proposed, then it can (and should) certify a smaller class consisting of "all health-care providers subject to section 1557 of the Affordable Care Act who: (1) object to providing puberty blockers, hormone therapy, or referrals for sex-change operations to minors; or (2) object to providing health care or services to a patient that they regard as inappropriate given the patient's biologically assigned sex." A class of this sort would obviate the defendants' commonality, typicality, and adequacy-of-representation objections (as well as their Rule 23(b)(2) objections, *see* Defs. Br., ECF No. 57, at 15–16). And it would easily clear the numerosity threshold of Rule 23(a)(1). *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) ("[N]umerosity is generally satisfied if there are more than 40 class members."). The Catholic Medical Association and its members, for example, believe that "healthcare that provides gender-transition procedures and interventions is neither healthful nor caring; it is dangerous," and the CMA has adopted an official resolution stating that "the Catholic Medical Association does not support the use of any hormones, hormone blocking agents or surgery in all human persons for the treatment of Gender Dysphoria." *See*

Ex. 2 at ¶¶ 210, 214. And the CMA has 2,500 members—well in excess of the numerosity threshold. *See* Ex. 3 at ¶ 3.

### III. The Proposed Classes Are Ascertainable

Nothing in the text of Rule 23 requires a class to be "ascertainable" or "identifiable."[1] But numerous courts—including the Fifth Circuit—have imposed an "ascertainability" requirement on top of the criteria for class certification spelled out in Rule 23. *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) ("[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."). This "ascertainability" doctrine allows courts to deny certification to vague or poorly defined classes. *See John v. National Security Fire & Casualty Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("There can be no class action if the proposed class is 'amorphous' or 'imprecise.'" (citation omitted)). *DeBremaecker*, for example, rejected a proposed class of "residents of this State active in the 'peace movement,'" because of the "patent uncertainty of the meaning of 'peace movement' in view of the broad spectrum of positions and activities which could conceivably be lumped under that term." *Id.*

There is nothing vague or imprecise about the proposed class definitions. A health-care provider is either subject to section 1557 or it isn't. And it either objects to providing puberty blockers to minors or it doesn't. More importantly, the requirement of "ascertainability" is applied with far less rigor when certification is sought under Rule 23(b)(2). At least three circuits hold that "ascertainability" is categorically inapplicable to (b)(2) classes.[2] And the Fifth Circuit (along with other courts) has

---

1. *See* Robert G. Bone, *Justifying Class Action Limits: Parsing the Debates over Ascertainability and Cy Pres*, 65 U. Kan. L. Rev. 913, 913 (2017) ("[C]lass ascertainability . . . [is] neither mandated by the text of Rule 23 nor supported by a reasonable interpretation of the Rule's language and purpose.").
2. *See Shelton v. Bledsoe*, 775 F.3d 554, 563 (3rd Cir. 2015) ("[A]scertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief"); *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("The

recognized that the ascertainability requirement is greatly relaxed in the (b)(2) context:

> [T]he precise definition of the [ (b)(2) ] class is relatively unimportant. If relief is granted to the plaintiff class, the defendants are legally obligated to comply, and it is usually unnecessary to define with precision the persons entitled to enforce compliance.

*In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 n.6 (5th Cir. 2004) (quoting *Rice v. City of Philadelphia*, 66 F.R.D. 17, 19 (E.D. Pa. 1974)).[3] *In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012), and *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999), approved (b)(3) classes despite the extensive individualized inquiries that were required; that creates an even steeper hill for the defendants, who must explain why this Court should reject ascertainability in the more forgiving (b)(2) context.

## IV. The Proposed Classes Satisfy Article III

The Supreme Court has never resolved whether the Constitution requires every absent class member to possess Article III standing. *See TransUnion LLC v. Ramirez*,

---

advisory committee's notes for Rule 23(b)(2) assure us that ascertainability is inappropriate in the (b)(2) context."); *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004) ("[W]hile the lack of identifiability [of class members] is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2).").

3. *See also Finch v. New York State Office of Children and Family Services*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008) ("A Rule 23(b)(2) class need not be defined as precisely as a Rule 23(b)(3) class"); *Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007) ("[L]ess precision is required of class definitions under Rule 23(b)(2) than under Rule 23(b)(2), where mandatory notice is required by due process . . . . Manageability is not as important a concern for injunctive classes as for damages classes." (citations omitted)); Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights Roots and Relevance Today*, 66 U. Kan. L. Rev. 325, 390 (2017) ("Conditioning certification on the ascertainability of class members should not apply to Rule 23(b)(2) classes because it is immaterial whether individual class members can be identified."); Michael T. Morley, *Nationwide Injunctions, Rule 23(b)(2), and the Remedial Powers of the Lower Courts*, 97 B.U. L. Rev. 615, 638–39 (2017) ("The definiteness and ascertainability requirements either do not apply in Rule 23(b)(2) cases, or apply in a far less demanding and precise manner.").

141 S. Ct. 2190, 2208 n.4 (2021) ("We do not here address the distinct question whether every class member must demonstrate standing before a court certifies a class."). Neither has the Fifth Circuit. *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020) ("Our court has not yet decided whether standing must be proven for unnamed class members, in addition to the class representative."). But the idea that *every* absent class member must have standing is very hard to square with the Supreme Court's repeated pronouncements that only one plaintiff needs to establish standing to seek declaratory or injunctive relief. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("Under our precedents, at least one party must demonstrate Article III standing for each claim for relief. . . . The Third Circuit accordingly erred by inquiring into the Little Sisters' independent Article III standing."); *Department of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) ("For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue."); *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."). The defendants correctly observe that the Second Circuit requires every absent class member to have Article III standing,[4] but that is not a binding pronouncement and should not (in our view) be followed.

## CONCLUSION

The motion for class certification should be granted.

---

4. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing.").

|  |  |
|---|---|
|  | Respectfully submitted. |
|  |  |
|  | /s/ Jonathan F. Mitchell |
| Gene P. Hamilton | Jonathan F. Mitchell |
| Virginia Bar No. 80434 | Texas Bar No. 24075463 |
| Vice-President and General Counsel | Mitchell Law PLLC |
| America First Legal Foundation | 111 Congress Avenue, Suite 400 |
| 300 Independence Avenue SE | Austin, Texas 78701 |
| Washington, DC 20003 | (512) 686-3940 (phone) |
| (202) 964-3721 (phone) | (512) 686-3941 (fax) |
| gene.hamilton@aflegal.org | jonathan@mitchell.law |
|  |  |
|  | *Counsel for Plaintiffs and* |
| Dated: September 9, 2022 | *the Proposed Class* |

## CERTIFICATE OF SERVICE

    I certify that on September 9, 2022, I served this document through CM/ECF upon:

Jeremy S.B. Newman
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
(202) 532-3114 (phone)
(202) 616-8460 (fax)
jeremy.s.newman@usdoj.gov

*Counsel for Defendants*

                                              /s/ Jonathan F. Mitchell
                                              Jonathan F. Mitchell
                                              *Counsel for Plaintiffs and*
                                              *the Proposed Class*