IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

SUSAN NEESE, M.D., *et al.*,                  §
                                              §
        Plaintiffs,                           §
                                              §
v.                                            §          2:21-CV-163-Z
                                              §
XAVIER BECERRA, in his official               §
capacity as Secretary of the United           §
States Department of Health and Human         §
Services, *et al.*,                           §
                                              §
        Defendants.                           §

## OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Certify Class ("Motion") (ECF No. 44), filed on

August 5, 2022. Having considered the motions, pleadings, and relevant law, the Court **GRANTS**

Plaintiffs' Motion and **CERTIFIES** Plaintiffs' proposed putative class.

### BACKGROUND

Section 1557 of the Affordable Care Act provides "an individual shall not, on the ground[s]

prohibited under" any of four civil rights statutes, "be excluded from participation in, be denied

the benefits of, or be subjected to discrimination under, any health program or activity, any part of

which is receiving Federal financial assistance, . . . or under any program or activity that is

administered by an Executive Agency or any entity established under this title (or amendments)."

42 U.S.C. § 18116(a) (citing 20 U.S.C. § 1681 *et seq.*, 29 U.S.C. § 794, 42 U.S.C. § 2000d *et seq.*,

and 42 U.S.C. § 6101 *et seq.*). In 2020, the Supreme Court decided *Bostock v. Clayton County*,

140 S. Ct. 1731 (2020). *Bostock* involved sex-discrimination claims under Title VII of the Civil

Rights Act of 1964, which prohibits discrimination in employment "because of [an]

individual's . . . sex." 42 U.S.C. § 2000e-2. The Supreme Court held Title VII's prohibition on

discrimination "because of" sex prohibits employers from firing or refusing to hire individuals "for being homosexual or transgender." *Bostock*, 140 S. Ct. at 1743.

On May 10, 2021, Defendant Becerra announced the Department of Health and Human Services ("HHS") will "interpret and enforce" Section 1557 to prohibit: (1) "discrimination on the basis of sexual orientation"; and (2) "discrimination on the basis of gender identity." *See* ECF No. 1-1. Plaintiffs Susan Neese, M.D., and James Hurly, M.D., allege Defendant Becerra's announced interpretation of Section 1557 inflicts immediate, present-day injury on them. ECF No. 11 at 8. This is because they "can only wonder whether they or their practices will lose federal money if they ever refuse to provide gender-affirming care to a transgender patient." *Id.* Plaintiffs allege Defendant Becerra's notification is "not in accordance with law" under Section 706(2)(A) of the Administrative Procedure Act because it wrongfully equates discrimination on account of sexual orientation and gender identity with "sex discrimination." *Id.* at 10. Plaintiffs also seek declaratory relief under 28 U.S.C. § 2201 and ask the Court to declare Section 1557 does not prohibit discrimination based on sexual orientation and gender identity. *Id.* Plaintiffs now move this Court to certify a class of all healthcare providers subject to Section 1557 of the Affordable Care Act under Federal Rule of Civil Procedure 23(b)(2).

### REPRESENTATIVE PLAINTIFFS HAVE STANDING

Standing is a "prerequisite to the class certification inquiry." *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 319 (5th Cir. 2002). When "it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020). "After all, if the class representative lacks standing, then there is no Article III suit to begin with — class certification or otherwise." *Id.* To establish standing, "a plaintiff must show (i) that he suffered an injury in fact

that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2202 (2021).

The Court previously found named Plaintiffs have standing because they face a "credible threat of enforcement" that creates an "injury in fact" that is "concrete and particularized" and "actual or imminent." ECF No. 30 at 9 (internal marks omitted). Defendants maintain Plaintiffs lack standing to challenge HHS's interpretation that Section 1557 prohibits discrimination on the basis of sexual orientation. Defendants argue Plaintiffs are uninjured by the portion of the notification that prohibits discrimination on account of "sexual orientation." ECF No. 57 at 9. Additionally, Defendants argue Plaintiffs lack standing: Plaintiffs face no credible threat of future enforcement because HHS does not consider Plaintiffs' anticipated actions to constitute discrimination. *Id.*

These arguments fail. To begin, Plaintiffs' injuries are "fairly traceable" to this action — even if they are not injured by every single word in the notification. Plaintiffs thus have standing to seek their remedy even if their injuries only arise from the gender-identity edict. ECF No. 61 at 6. Second, courts assess standing at the moment the lawsuit is filed and is unaffected by post-filing development. *See Carney v. Adams*, 141 S. Ct. 493, 499 (2020); *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) (stating standing is assessed "at the time the action commences"). Thus, the notice of proposed rulemaking concerns only whether Plaintiffs' claims have become moot. But as Plaintiffs explain, Defendants "are not making a mootness argument, and they cannot show that the Notice of Proposed Rulemaking moots [Plaintiffs'] claims when the rulemaking process is not complete and the contents of the proposed rule could change between now and when the rule becomes final." ECF No. 61 at 6 (citing *El Paso*

*Elec. Co. v. FERC*, 667 F.2d 462, 467 (5th Cir. 1982)). Furthermore, a notice of proposed rulemaking does not withdraw or nullify the earlier agency "action" that Plaintiffs challenge. *Id.* at 6–7 (citing *Biden v. Texas*, 143 S. Ct. 2528, 2544–45 (2022)). Third, the Court agrees with Plaintiffs "that the Notice of Rulemaking does nothing to alleviate" their objections to the Secretary notification of May 10, 2021. *Id.* at 7. This is because "a provider can only guess as to whether the powers that be at HHS will regard its refusal to provide puberty blockers to a minor as 'legitimate' or 'nondiscriminatory.'" *Id.* at 8. Accordingly, the named Plaintiffs have standing.

PLAINTIFFS' PUTATIVE CLASS

"[A class action lawsuit] is the most effective means private citizens have to enforce the law."[1] "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The party seeking class certification bears the burden of proof to establish that the proposed class satisfies Federal Rule of Civil Procedure 23. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of Rule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

"To establish class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as requirements of Rule 23(b)(1), (2), or (3)." *Stukenberg*, 675 F.3d at 837. Rule 23(a) lists four class-certification requirements: (1) "the class [be] so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of

---

[1] *See* BRIAN T. FITZPATRICK, THE CONSERVATIVE CASE FOR CLASS ACTIONS 2 (2019).

the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). "These four threshold conditions are 'commonly known as numerosity, commonality, typicality, and adequacy of representation.'" *U.S. Navy SEALs 1–26 v. Austin*, No. 4:21-CV-01236-O, 2022 WL 1025144, at \*2 (N.D. Tex. Mar. 28, 2022) (quoting *Flecha*, 946 F.3d at 766). The Fifth Circuit has articulated an additional, "ascertainably" requirement. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) ("[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.").

A party seeking class certification must also satisfy at least one ground listed in Rule 23(b). A party meets Rule 23(b)(2)'s requirements when it satisfies Rule 23(a)'s four threshold requirements and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). This requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

## A. The Requirements of Rule 23(a) Are Met

1. *Plaintiffs' putative class satisfies Rule 23(a)(1)'s numerosity requirement.*

Under Rule 23(a)(1), Plaintiffs must show "the class is so numerous that joinder of all members is impracticable." "[N]umerosity is generally satisfied if there are more than 40 class members." *In re Nat'l Football League Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). Northern District of Texas Local Rule 23.2(b)(1) allows Plaintiffs to "approximate number of class

members." Plaintiffs estimate that the proposed class of healthcare providers subject to Section 1557 "easily exceeds 1 million." ECF No. 45 at 5. This is because Section 1557's anti-discrimination protections apply to *any* healthcare provider participating in a federally funded healthcare program, such as Medicare, Medicaid, or CHIP. *Id.* at 4.

Defendants assert Plaintiffs must provide evidence that other class members share their contention of harm. ECF No. 57 at 17–18. This is incorrect — at least for the purposes of numerosity analysis. True, Plaintiffs "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350. But Plaintiffs have met their burden, having proved the class consists of more than 40 members. *See* ECF No. 45-1 at 15. Indeed, numerosity is almost never litigated.[2] Defendants' proposed rule would especially defeat the purposes of Rule 23(b)(2), which was designed specifically for cases "seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998) (quoting HERBERT NEWBERG & ALBA Conte, 1 NEWBERG ON CLASS ACTIONS § 4.11 (3d ed. 1992)). Accordingly, Plaintiffs' proposed class satisfies Rule 23(a)(1).

2. *Plaintiffs' putative class meets Rule 23(a)(2) and Rule 23(a)(3)'s commonality and typicality requirements.*

Commonality requires a plaintiff to show "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This also requires Plaintiffs to demonstrate class members "have suffered the same injury." *Wal-Mart*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "That common contention, moreover, must be of such a nature

---

[2] In *Wal-Mart*, for example, the representatives proposed a class similar in size (1.5 million female employees), because of Wal-Mart's alleged discrimination against women in violation of Title VII of the Civil Rights Act of 1964. 564 U.S. at 343. The Court's numerosity analysis was contained in one sentence in a footnote in Justice Ginsburg's dissent: "The numerosity requirement is clearly met and Wal-Mart does not contend otherwise." *Id.* at 368 n.2.

that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* What matters is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 131, 132 (2009)).

Rule 23(a)'s commonality and typicality requirements "tend to merge." *Id.* at 349 n.5. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[3] *Id.* The presence of a single common question can suffice to satisfy Rule 23(a)(2). *See id.* at 359.

Plaintiffs propose at least two questions of law common to all class members. First, whether Defendant Becerra's interpretation of Section 1557 is consistent with the statutory definition of "sex" discrimination, as construed by the Supreme Court in *Bostock*. ECF No. 45 at 5. Second, to what extent does Section 1557's prohibition on "sex" discrimination compel healthcare providers to provide "gender-affirming care" to patients suffering from gender dysphoria? *Id.* Plaintiffs further aver each member suffers the same injury from the legal uncertainty over their legal obligations under Section 1557. *Id.* Plaintiffs also argue their claims

---

[3] In *Falcon*, the Supreme Court held commonality and typicality were not met because the fact that Falcon was allegedly discriminated against for *promotion* was not proof of widespread discriminatory *hiring* practices. 457 U.S. at 157–58. In other words, Falcon did not raise common questions of law or fact between Mexican-American employees and applicants who were not hired and therefore could not represent those who had not been hired. Similarly, in *Wal-Mart*, the Court held there was no "specific employment practice" that tied all 1.5 million claims together. 564 U.S. at 357 ("Merely showing that Wal-Mart's policy of [lower-level supervisor] discretion has produced an overall sex-based disparity does not suffice.").

are "more than typical" of the claims of the class: "they are precisely the same as those of all members of the proposed class." *Id.* at 6.

Defendants argue Rule 23(a)(2) is not met because "many members of the proposed class do not share Plaintiffs' contention or claimed injury" or publicly oppose Plaintiffs' efforts. *See* ECF No. 57 at 9. This contention is better suited for Rule 23(a)(4)'s adequacy of representation analysis. But in any case, this argument does not defeat commonality — and especially not in a Rule 23(b)(2) action. *See, e.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1315–16 (D.C. Cir. 2019) ("When a challenged policy is generally applicable to the class for purposes of Rule 23(b)(2), the history of the Rule confirms the propriety of certifying the class even if some members may be uninterested in pressing the claims."); *In re Whirlpool Corp. Front-Loading Washing Prods. Liability Litig.*, 722 F.3d 838, 854–55 (6th Cir. 2013) (commonality not defeated simply because defendants contended class included owners who were "pleased with the performance of their" machines and thus dissimilar to consumers who complained of mold problem).

"[T]he *Wal-Mart* Court nowhere stated that at the class certification stage, every member of the class must establish that he, she or it was *in fact* injured by the common policy." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 23 (1st Cir. 2015). In other words, Rule 23(b)(2) does not require "a specific policy uniformly affecting — and injuring — each [plaintiff] . . . so long as declaratory or injunctive relief 'settling the legality of the [defendant's] behavior with respect to the class as a whole is appropriate.'" *Prantil v. Arkema Inc.*, 986 F.3d 570, 581–82 (5th Cir. 2021) (quoting *Stukenberg*, 675 F.3d at 847–48) (alterations in original).

Here, "the class members assert an entitlement to relief that is entirely unaffected by the . . . factual differences noted by the government." *J.D.*, 925 F.3d at 1321. "The common questions therefore are 'apt to drive the resolution of the litigation.'" *Id.* (quoting *Wal-Mart*, 564

U.S. at 350). Because the putative class members' claims can be determined "in one stroke," Rule 23(a)(2) is satisfied. *Wal-Mart*, 564 U.S. at 350.

As for typicality, Defendants argue Plaintiffs fail to satisfy this "requirement for the same reason they fail the commonality requirement: the proposed class includes many providers who oppose Plaintiffs' legal contentions and who do not share Plaintiffs' claimed injury." ECF No. 57 at 14. The Court must also reject this argument for the purposes of Rule 23(a)(3). *See J.D.*, 925 F.3d at 1314 ("The class members all assert a common entitlement to make that choice on their own . . . . The class representatives are suited to press that interest on the class's behalf, even if various class members might make varying ultimate decisions about how to exercise their choice."); *see also, e.g.*, *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." (internal marks omitted)); *Barnes*, 161 F.3d at 141 ("[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." (quoting 1 NEWBERG ON CLASS ACTIONS § 3.15)); *cf. Vita Nuova, Inc. v. Azar*, No. 4:19-CV-00532-O, 2020 WL 8271942, at *7 (N.D. Tex. Dec. 2, 2020) ("That some class members might make this employment choice differently than Vita Nuova does not render Vita Nuova's claims unrepresentative of the claims of the class as a whole."). Additionally, Defendants argue because Plaintiffs "do not discriminate or wish to discriminate on the basis of sexual orientation," their claims "are atypical of claims of any proposed class members who wish to discriminate on the basis of sexual orientation." ECF No. 57 at 14. For the same reason, this argument fares no better. Therefore, Plaintiffs' putative class satisfies the commonality and typicality requirements of Rule 23(a)(2) and (a)(3).

3.  *Plaintiffs' putative class meets Rule 23(a)(4)'s adequacy of representation requirement.*

Under Rule 23(a)(4), the representative party in a class action must "fairly and adequately protect the interests of the class." Rule 23(a)(4)'s adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Adequacy encompasses three separate but related inquiries: (1) "the zeal and competence of the representative[s'] counsel"; (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) the risk of "conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)) (alterations in original).

Rule 23(a)(3) "preclude[s] class certification where the economic interests and objectives of the named representatives differ significantly from the economic interests and objectives of unnamed class members."[4] *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003). "Significantly, the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Id.* at 1189 (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1768 (2d ed. 1986)); *see also Slade*, 856 F.3d at 412 ("Of course, not all purported conflicts between a class representative and members of the class will defeat adequacy."). "A fundamental conflict exists where some party members claim to have

---

[4] *See, e.g., Amchem Prods.*, 521 U.S. at 626 (finding conflict when class members who were currently injured by asbestos exposure sought "generous immediate payments," whereas exposure-only class members sought to ensure "an ample, inflation-protected fund for the future").

been harmed by the same conduct that benefitted other members of the class."[5] *Id.* The adequacy of representation requirement "tend[s] to merge" with the commonality and typicality criteria of Rule 23(a). *Amchem Prods.*, 521 U.S. at 626 n.20 (quoting *Falcon*, 457 U.S. at 157 n.13) (alteration in original).

Plaintiffs assert they will fairly and adequately represent the interests of fellow class members. ECF No. 45 at 6. Plaintiffs argue there are no conflicts of interest because the requested relief will preserve the rights of those health providers to continue following Defendant Becerra's interpretations of Section 1557 should they choose to do so. *Id.* at 7. Defendants do not dispute Plaintiffs will adequately prosecute the action. However, Defendants insist "conflicts exist . . . because much of the class is opposed to the relief sought by Plaintiffs." ECF No. 57 at 15. Defendants also argue the relief Plaintiffs seek would harm class members because two healthcare facilities that serve the LGBT community stated "growing numbers of LGBTQ patients are likely to turn to their organizations for health-care services" and "many health care providers subject to Section 1557 are themselves lesbian, gay, bisexual, or transgender." *Id.* at 16–17 (internal marks omitted).

---

[5] *See Valley Drug Co.*, 350 F.3d at 1190 (finding conflict when three national wholesalers whose transactions constituted over 50 percent of plaintiffs' total claims experienced net gain from the absence of generic drugs in terazosin hydrochloride market); *Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (finding conflict among class members in airport-noise case because increased operations at airport "make the area attractive for business and may increase the value of land, even as they make land less attractive for residential purposes."); *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1365 (N.D. Cal. Feb. 11, 1994) ("[I]n order to obtain class certification, the plaintiffs in a partial disclosure case must demonstrate that the putative class is not filled with in/out traders so as to render the resulting conflicting interests problematic."); *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y., Sept. 18, 1998) ("As to the existence of alleged conflicts because Class members have differing interests in establishing the dates and amounts of [copper price] manipulation, they do not give rise to a material conflict defeating adequacy under Rule 23(a)(4)").

Defendants do not identify any fundamental conflicts. As the D.C. Circuit explained in *J.D.*:

> There might often be a possibility that some absent class members possess conscientious beliefs running counter to an interest in redressing an alleged infringement of their rights. Indeed, '[i]n any conceivable case, some of the members of the class will wish to assert their rights while others will not wish to do so.' Charles Alan Wright, Class Actions, 47 F.R.D. 169, 174 (1969).
>
> That is especially so in the civil rights cases that make up the heartland of actions under Rule 23(b)(2), which by nature can involve polarizing issues. In such situations, courts have been 'reluctant to find the class representatives inadequate' even if 'some class members have an explicit desire to maintain the status quo.' 2 Rubenstein, Newberg on Class Actions § 3:64; *cf.* Charise Cheney, *Blacks on Brown: Intra-Community Debates over School Desegregation in Topeka, Kansas, 1941–1955*, 42 W. Hist. Q. 481 (2001) (describing opposition to school desegregation among black Topekans in the lead-up to *Brown v. Board of Education*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954)). As courts have long recognized, "'[i]t is not 'fatal if some members of the class might prefer not to have violations of their rights remedied.'" *Lanner v. Wimmer*, 662 F.2d 1349, 1357 (10th Cir. 1981) (quoting *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978)).

925 F.3d at 1317 (alterations in original).

The Court agrees with this reasoning: that some putative class members may disagree with Plaintiffs' aims or beliefs does not defeat the adequacy-of-representation requirement. Furthermore, the Court finds Defendants' theories of harm speculative at best. As Plaintiff notes, *Bostock*'s anti-discrimination protections will remain in place even if Defendant Becerra's notification is held unlawful and set aside. ECF No. 61 at 11. And it is "far from clear that a health-care provider will be 'harmed' by an increased demand for its services." *Id.* Accordingly, the requirements of Rule 23(a)(4) are met.

4. *Plaintiffs' putative class contains no ascertainability problems.*

Ascertainability is a non-textual rule imposed by courts on top of the class-certification criteria detailed in Rule 23. *See DeBremaecker*, 433 F.2d at 734 ("[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."). This

doctrine allows courts to deny certification to vague or poorly defined classes. *See John*, 501 F.3d at 445 n.3 ("There can be no class action if the proposed class is 'amorphous' or 'imprecise.'"). Ascertainability also requires class definitions to be based on objective criteria. *See Marcus v. BMW of N. Am.*, 687 F.3d 583, 593 (5th Cir. 2012).

At least three circuits — however — hold the ascertainability doctrine is categorically inapplicable to Rule 23(b)(2) classes. *See Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016); *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3rd Cir. 2015); *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004); *cf. Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972), *abrogated on other grounds*, *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978). The Fifth Circuit has acknowledged other courts have held that, absent notice and opt-out rights, "a precise class definition is not as critical where certification of a class for injunctive or declaratory relief is sought under rule 23(b)(2)." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004). Although the Fifth Circuit has indicated a putative class "must be adequately defined and clearly ascertainable," it has not explicitly addressed the argument that definiteness should not apply when notice and opt-out rights are not at issue. *DeBremaecker*, 433 F.2d at 734; *see also In re Monumental Life Ins.*, 365 F.3d at 413 ("Where notice and opt-out rights are requested, however, a precise class definition becomes just as important as in the rule 23(b)(3) context."). There is therefore no Fifth Circuit precedent taking direct issue with the Third, Sixth, and Tenth Circuits' analysis.

The Court ascertains that these circuits are correct. Fundamentally, ascertainability addresses the same issues as a Rule 23(b)(3) predominance inquiry — *i.e.*, if it is difficult for the Court to ascertain who class members are, then individualized issues will predominate over common questions. But this is not a concern in Rule 23(b)(2) classes because (b)(2) class members

13

are not seeking individualized relief and are not entitled to notice and because (b)(2) has no predominance requirement. *See* FED. R. CIV. P. 23(c)(2). Accordingly, this putative class lacks ascertainability problems. But even if the doctrine applies to Rule 23(b)(2) actions, the Court agrees with Plaintiffs: "There is nothing vague or imprecise about the proposed class definitions. A health-care provider is either subject to section 1557 or it isn't." ECF No. 61 at 12.

### B. Plaintiffs' Putative Class Satisfies Rule 23(b)(2)

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Wal-Mart*, 564 U.S. at 360. The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (quoting Nagareda, 84 N.Y.U. L. REV. at 132). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* The Rule provides no opportunity for "(b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Id.* at 362. The Fifth Circuit has interpreted Rule 23(b)(2) to require two relevant requirements: (1) the "class members must have been harmed in essentially the same way"; and (2) "the injunctive relief sought must be specific." *Stuckenberg*, 675 F.3d at 845 (internal marks omitted).

Plaintiffs do not seek individualized relief for any class member or any subset of the class. *See* ECF No. 45 at 10–11 (seeking APA and declaratory-judgment remedies). And Defendants are "act[ing] . . . on grounds that apply generally to the class" because Section 1557 and Defendant Becerra's notification apply to each of the class members. *Id.* at 8 (quoting FED. R. CIV.

P. 23(b)(2)). Defendants again repeat their argument that class certification is inappropriate because some proposed class members disagree with Plaintiffs. *See* ECF No. 57 at 19–20. But as explained, this argument fails. Accordingly, the putative class satisfies Rule 23(b)(2).

### C.  Plaintiffs' Putative Class Satisfies Article III

A class may ultimately contain no injured class members because the class claims fail on the merits. But is it acceptable that some of the class members may have meritorious claims, while others do not? Here, Defendants repeat their argument that some members of the class support the notification. ECF No. 57 at 20–21. Only this time, Defendants argue certification would violate Article III instead of Rule 23. *Id.*

Neither the Supreme Court nor the Fifth Circuit has resolved whether the Constitution requires *every* absent class member to possess Article III standing. *See TransUnion*, 141 S. Ct. at 2208 n.4; *Flecha*, 946 F.3d at 768. Some courts have held only *the named plaintiff* needs to establish standing to seek relief on behalf of the class. *See Nexium*, 777 F.3d at 31–32 (1st Cir. 2015) (collecting cases). Other courts have held Rule 23(b)(3)'s predominance requirement demands a class cannot contain *any* uninjured class members. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) ("Meeting the predominance requirement demands more than common evidence the defendants colluded to raise fuel surcharge rates. The plaintiffs must also show that they can prove, through common evidence, that all class members were in fact injured."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("[W]here fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance.").

15

In the aforementioned cases, courts used different terminology to address what is essentially a "predominance" issue. The correct answer has little to do with *how many* uninjured class members there are; it has everything to do with how hard it is to identify them. In other words, if a court needs myriad mini-trials to identify and separate uninjured class members, then Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual class members" is not met. But Rule 23(b)(2) contains no predominance requirement. And Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant . . . . [or] an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360 (emphasis removed). The Court is thus sympathetic to Chief Justice Roberts' concurrence in *Tyson Foods v. Bouaphakeo*: "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." 577 U.S. 442, 467 (2016) (Roberts, C.J., concurring). But Chief Justice Roberts' concern in *Tyson Foods* — a Rule 23(b)(3) case — was there may not have been any way to ensure that the jury's damages award went only to injured class members. *Id.* Similar concerns do not exist here, where Plaintiffs seek only non-monetary relief.

The same reasons which support certification under Rule 23(b)(2) also support certification here — namely, (b)(2) actions by their nature often involve polarizing questions affecting civil rights. If (b)(2) class representatives were required to prove every absent class member included in the putative class definition shared their contentions, then it is difficult to see how any (b)(2) action could qualify. Furthermore, the alternative would essentially require class representatives to propose a "fail-safe" class: "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012). "Such a class definition is improper because a class member either

wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (collecting cases).

Requiring the claims of the class representatives to be identical to those of each class member to establish standing would also "confuse[ ] the requirements of Article III and Rule 23." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 421 (6th Cir. 1998)). "Indeed, such an approach would render superfluous the Rule 23 commonality . . . requirement[] because any case that survived such a strict Article III analysis would by definition present only common issues." *Id.* In any event — and even if Defendants' proposed rule were adopted — each class member suffers the same injury from the legal uncertainty created by Defendant Becerra's notification of May 10, 2021. This is true regardless of whether some class members disagree with Plaintiffs. Therefore, the Court finds Plaintiffs' proposed putative class satisfies Article III and Rule 23.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion and **CERTIFIES** the class under Rule 23(b)(2).

**SO ORDERED**.

October **14**, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

17